(No. 14958.—Reversed and remanded.)

PATRICK KING *et al.* Appellees, *vs.* WILLIAM B. WALRATH, Appellant.

*Opinion filed October 28, 1924.*

SPECIFIC PERFORMANCE—*parties are not entitled to specific performance after abandoning contract.* Parties to a contract for the purchase of real property by the payment of installments of the purchase price are not entitled to demand specific performance after they have abandoned the contract and delivered up possession of the property in pursuance of their declaration that they cannot carry it out; and the fact that the complainants recorded the contract after their declaration of abandonment does not give them any additional right to a decree.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

KING, BROWN & HURLBUT, for appellant.

PETER J. HOWER, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

The circuit court of Cook county entered a decree for the specific performance of a contract to convey certain real estate known as 1550 West Seventy-third street, in Chicago, entered into between Edward J. and William H. Kelley, owners of the property, and Patrick King and Catherine King, appellees. The decree of the court finds that since April, 1920, appellant, William B. Walrath, has been in possession of the premises and has received and collected

the rents and income on the property, and that they are a proper charge to be adjusted in an accounting between the parties; that appellant is entitled to be reimbursed by appellees for taxes on the property for the years 1919, 1920 and 1921, with five per cent interest, and for his expenses in decorating the premises immediately after they were vacated by appellees. The decree for specific performance is on condition that appellees pay appellant the amount found due him on the accounting. Walrath, who with the Kelleys was made a party defendant to the bill, prosecutes this appeal for a review of the decree.

The evidence in the record is in substance the following: Edward J. and William H. Kelley were seized of the real estate contracted by them to appellees on November 5, 1915. By the terms of the contract appellees were to pay for the property the sum of $4390,—$500 on the day of the contract, $1800 by assuming an incumbrance on the premises due May 4, 1921, $700 on May 4, 1921, and $1390 in monthly installments of $30, beginning with February 1, 1916, with six per cent interest. Appellees also agreed to pay all taxes and assessments legally levied against the premises subsequent to the year 1914. The Kelleys agreed to deliver a deed to appellees to the premises when they had paid the sum of $1890 of the purchase price with all accrued interest and had made due performance of the other terms of the contract required to be performed. The time for payments is made the essence of the contract. The contract also provided that in case of the failure of appellees to make the payments required of them by the contract or any part thereof, the contract, at the option of the owners of the property, should be forfeited and determined and appellees should forfeit all payments made by them, and such payments should be retained by the owners in full satisfaction and liquidation of all damages by them sustained, and they should have the right to re-enter and take possession of the premises. There was no provision in the con-

tract giving appellees the right of occupancy, but they went into possession soon after the contract was made and remained in possession until April 28, 1920. On February 15, 1916, the Kelleys assigned their interest in the contract to appellant. Appellees made the payments provided for in the contract up to March, 1920, but it appears from the evidence that the payments were not made at all times on the dates they were due, and some of the payments were made and accepted which were as much as a month overdue. On March 31, 1920, appellees were in arrears $19.43, and did not during the month of April following pay that sum or the $30 installment due in April, 1920, and had not paid the taxes for the year 1919 but had paid all other taxes. Appellees moved off the premises April 28, 1920, and on April 30 appellant received a letter signed by both appellees, in this language: "I have sickness and other trouble. We no longer are able to make payment on property known as 1550 West Seventy-third street. We are giving up possession. You will find it vacant on April 30. Enclosed find tax bills and key." The key referred to in the letter was the key to the front door of the house on the premises and it accompanied the letter. Appellant replied to the letter by writing appellees that he was sorry they found themselves unable to carry out the contract, and requested them to send him their copy of the contract (issued in duplicate) and to write on the contract and sign these words: "April 30, 1920.—This contract is canceled by mutual consent." Appellant having received no answer to that letter, on May 5, 1920, sent a formal notice of forfeiture of the contract to appellees, which recited the provisions of the contract and that certain payments had not been made; that there was due under the same the sum of $49.43; that appellees had abandoned the premises, having announced their intention of making no further payments on the contract; and they were notified that appellant had elected to, and did, declare the agreement null and void and all payments made there-

under forfeited as liquidated damages. Appellant having received no reply took possession of the premises and had repair work and decorating done at a cost of about $150, and on May 19, 1920, made a contract with Mr. and Mrs. John O'Donnell for the sale of the premises for $6500, payable in monthly payments. On May 27, 1920, appellees filed their copy of the contract for record and tendered appellant $49.43, which he refused to accept. They made no tender for taxes and special assessments then due, aggregating $53.40. On June 17, 1920, they filed their bill for specific performance, and on the same day appellant paid the taxes and assessments on the property for the year 1919, aggregating $53.40. The O'Donnells refused to take possession of the property and make the payments which they agreed to make and their contract was canceled. Appellant then re-advertised the property for sale, and about August 1, 1920, made a contract for the sale of the premises with Clara C. Dornan for $7500, who took possession under this contract and was in possession on November 10, 1920, when appellees filed their amended bill alleging that appellant had entered into a contract for the sale of the premises and was collecting the rents and profits thereof. Appellant spent about $700 in decorating, painting and improving the premises. He testified that the rental value of the property on November 5, 1915, was $25 or $30 a month. Appellees' testimony was to the effect that the rental value was $20 or $25 a month.

Under the evidence in this record appellees were not equitably entitled to specific performance of the contract. We have given the evidence in full,—at least the substance of it. It clearly shows that appellees voluntarily abandoned the contract, surrendered possession to appellant and notified him that they were unable to make further payments upon the contract. Appellant accepted their offer of abandonment of the contract and asked them to further signify its cancellation by returning their copy of the contract with

a statement on it that it was canceled by mutual consent. He then proceeded to declare a forfeiture and take possession of the property and later sold it to another party. The fact that appellees did not return their copy of the contract with the signed statement requested by appellant did not change the situation, as this was only a precautionary measure on the part of appellant to preserve written evidence of the fact that the contract was canceled or abandoned. The law is well settled by this court that one who has abandoned a contract and has delivered up possession of the property in pursuance of his declaration that he cannot carry it out is not entitled to specific performance of such contract. The rule in equity is that he must show that he has always been ready, willing and able to perform the contract on his part, and he is not entitled to specific performance if he has consented to a rescission of the contract or has abandoned it. (*Cuppy* v. *Allen,* 176 Ill. 162; *Lasher* v. *Loeffler,* 190 id. 150; *Hayes* v. *Carey,* 287 id. 274.) The recording of the contract after its rescission and abandonment did not give appellees any additional right to a decree. Besides, they failed to tender the amount of taxes and special assessments then due on the property when they made their tender of the amount due on the contract. It is, however, for the particular reason that the contract was rescinded and abandoned that we hold that appellees are not entitled to specific performance in this case.

Under the evidence in the record the court erred in not dismissing the bill for want of equity. The decree of the court is therefore reversed and the cause is remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*