### KLUCK v. LEUSCHNER et al.
### No. 1390.

Court of Civil Appeals of Texas. Waco.
April 12, 1934.

Rehearing Denied May 10, 1934.

J. W. Spivey and John McNamara, both of Waco, for plaintiff in error.

Terry Dickens and Bartlett, Carter & Rice, all of Marlin, and Robert F. Higgins, of Houston, for defendants in error.

ALEXANDER, Justice.

Gus Kluck brought this suit against Edmond Leuschner and others to recover on certain promissory notes amounting to approximately $17,000, which notes were alleged to have been executed by Edmond Leuschner and Annie Kate Leuschner, the latter now deceased. Charles Leuschner intervened in the case, and he and the defendant Edmond Leuschner, by way of answer and cross-action, alleged that they had entered into a valid contract with the plaintiff by which they were to convey to the plaintiff certain land in McMullen county and in consideration therefor the plaintiff was to cancel the notes here sued on. They prayed for specific performance of the contract and for cancellation of said notes. The case was tried before a jury and resulted in judgment that the plaintiff take nothing and in favor of Edmond Leuschner and Charles Leuschner for specific performance of said contract and for cancellation of said notes. The plaintiff sued out this writ of error.

The material question to be determined is whether or not Edmond Leuschner, the vendor, after having been notified by Kluck, the vendee, that he would not accept title to said land, so conducted himself with reference to said land as to constitute an abandonment or waiver of his right to demand specific performance of the contract.

The contract entered into by the parties was as follows:
"State of Texas, County of Bexar.

"Know All Men By These Presents:

"That this agreement, this day made and entered into by and between G. Kluck and Edmond Leuschner, both of Falls County, Texas, and Chas. Leuschner, of McMullen County, Texas, Witnesseth:

"That the title to Forty-five Hundred Fifty-Nine (4559) acres out of the H. B. Shiner Ranch in McMullen County, Texas, stands in the name of Edmond Leuschner, to whom it was conveyed by J. B. Crow, when, as a matter of fact, this land is owned jointly by Edmond and Chas. Leuschner.

"That said land is subject to the lien of two Deeds of Trust, one for Fifteen Thousand Dollars ($15,000.00) in favor of E. B. Chandler & Company, the other for approximately Thirteen Thousand Dollars ($13,000.00) in favor of the Estate of Mrs. Louie West Shiner.

"That the said Edmond Leuschner owes the said G. Kluck notes aggregating approximately Twenty-Thousand Dollars ($20,000.00).

"That in consideration of the said Edmond Leuschner deeding his interest in said land to the said G. Kluck, the said G. Kluck, subject to his approval of the title to said land, will assume the indebtedness of Fifteen Thousand Dollars ($15,000.00) owing on said land to E. B. Chandler & Company, and will cancel all of the indebtedness owing to him by the said Edmond Leuschner, and it is understood and agreed that when said land is deeded to the said G. Kluck, he will then own Twenty-two Hundred Sixty-six (2266) acres, being the West one-half (½) thereof, and the said Chas. Leuschner will own the balance, the said G. Kluck owing $15,000.00 of the indebtedness, and the said Chas. Leuschner owing the balance owing on said land, including interest, attorney's fees, and taxes, and said parties will adjust between themselves the balance of the indebtedness owing on said land.

"Witness our hands, on this, the 6th day of December, A. D. 1928.

"[Signed] G. Kluck
"[Signed] Chas. Leuschner
"[Signed] Edmond Leuschner."

At the time of entering into the above contract, the 4,559-acre tract of land in question had a blanket first lien against it in favor of Chandler & Co. in the sum of $15,000, and a second lien in favor of the Shiner estate in the sum of $13,000. According to the terms of the agreement, the west half of said land was to be conveyed to Kluck, and he was to assume and pay the $15,000 due Chandler & Co., and Charles Leuschner was to own the east half of the land and he was to assume and pay the $13,000 due the Shiner estate. In the latter part of December, 1928, and within less than thirty days after entering into said contract, Kluck, the vendee, notified the vendors that he would not accept title to said land and would not carry out the contract. Thereafter Edmond Leuschner and Charles Leuschner divided the land mentioned in the contract, Edmond Leuschner taking the 2,266 acres on the west side, which is the land here involved, and Charles Leuschner taking the 2,293 acres on the east side of the tract. The Chandler loan of $15,000 which was to have been assumed by Kluck was not due until January 1, 1930. Some time during the year 1929, either in March or September (the record is not clear), and several months prior to the time when said loan would have matured, Edmond Leuschner, with full knowledge of the fact that Kluck had repudiated the contract, gave a deed of trust on said land to the Federal Land Bank at Houston to secure a loan of $13,000 and with the money so raised, and with $2,000 additional money, took up the Chandler loan. He paid to Chandler & Co. a bonus of $625 for the privilege of taking up said loan before its maturity. Some time thereafter Edmond Leuschner gave a second deed of trust upon said 2,266-acre tract of land to secure the payment of a debt of $4,106.50 in favor of the Shiner estate. The loan made by the Federal Land Bank was on the amortization plan, and was still outstanding and unpaid at the time of the trial of the case. The lien in favor of the Shiner estate was likewise unreleased, although Leuschner testified that he had made arrangements by which the release could be obtained upon demand. Charles Leuschner likewise incumbered the land set aside to him in said partition by placing a first lien thereon in favor of the Federal Land Bank in the sum of $14,000 and a second lien in favor of the Shiner estate for $4,106.50. Edmond Leuschner remained in possession of the property here involved and did not bring an action to enforce specific performance of the contract from the time of the breach thereof in December, 1928, until Kluck brought suit in June, 1930, to recover on the notes in question.

 Upon the breach or repudiation of a contract of sale by a vendee, ordinarily the vendor has his election as to whether he will treat the contract as breached and sue for the damages, or insist upon a specific performance thereof; but in order to be entitled to specific performance he must be and remain at all times ready, able, and willing to perform his part of the contract. The right to specific performance is one which may be waived or abandoned and abandonment may be inferred from the circumstances or the conduct of the parties showing an intention inconsistent with performance. Such vendor who intends to

insist upon a specific performance must at all times deal with the property in a manner consistent with a sale thereof to his vendee. He cannot treat the property as his own and deal with it in a manner inconsistent with such sale and thus speculate on the improvement of his position and thereafter insist upon a specific performance of the contract by the vendee. 58 C. J. 909, 981; Whittenburg v. Groves (Tex. Com. App.) 208 S. W. 901; Community of Priests v. Byrne (Tex. Com. App.) 255 S. W. 601; De Cordova v. Smith, 9 Tex. 129, 58 Am. Dec. 136; Van Abel v. Wemmering, 33 S. D. 544, 146 N. W. 697; King v. Walrath, 313 Ill. 551, 145 N. E. 94.

■ In our opinion, Edmond Leuschner's conduct in voluntarily taking up and paying off before its maturity the $15,000 loan which was to have been assumed by Kluck, and by placing on the property a new first lien containing entirely different terms from those embodied in the original mortgage, and by placing a second deed of trust upon the property to secure the payment of the sum of $4,-106.50 to the Shiner estate, conclusively evidences an intention on his part to treat the contract as breached and to waive the right to insist upon specific performance thereof. In this connection Leuschner contends that the second lien which he gave on the property in question in favor of the Shiner estate for the sum of $4,106.50 was given in renewal of a part of the $13,000 theretofore owing to said estate and secured by a lien on said property, and that the lien in favor of the Federal Land Bank was given for money with which to pay off the $15,000 owing to Chandler & Co.; that said original debts were about to mature, and it was necessary for him to rearrange said loans in order to prevent a foreclosure; and that he ought not to be held to have waived his right to insist upon a specific performance of his contract merely because he refinanced said loans in order to avoid a loss of the property. It appears without dispute, however, from the defendant's pleadings and from his own testimony, that he took up and paid off the Chandler & Co. debt several months before it was due and that he paid a bonus of $625 for the privilege of doing so. His acts in this respect therefore appear to have been entirely voluntary, and since he paid a bonus for the privilege of paying the debt before its maturity, we presume he did so for his own personal benefit. With reference to the $13,-000 due the Shiner estate, a part of which, it is claimed, was renewed by the deed of trust given for the sum of $4,106.50, it appears from the contract that this debt was to be assumed

and paid by Charles Leuschner, yet Edmond Leuschner, after a partition of the property between himself and Charles Leuschner, incumbered the property being sold by him to Kluck to secure the payment of a part of this debt. If Edmond Leuschner intended to insist upon a specific performance of his contract with Kluck, he should not have thus incumbered the property being sold by him to Kluck to secure the payment of a debt owing by a third party. Such conduct on the part of Edmond Leuschner indicates clearly that he was dealing with the property as his own and not as the property of Kluck.

It further appears that both of the deeds of trust executed by Leuschner on the property in question, the one in favor of Federal Land Bank for $13,000 and the other in favor of the Shiner estate for $4,106.50, were unreleased at the time of the trial. It is true that Leuschner testified that he had a right to pay off these debts and to secure a release thereof at any time, but the fact remains that the releases had not been obtained at the time of the entry of the decree for specific performance herein. Consequently if the decree is enforced, a different contract will be forced upon Kluck from that entered into by him. We do not think, however, that Leuschner would have been entitled to a decree of specific performance had these liens been released at the time of the trial. The gravamen of Leuschner's offense was, not in his failure to secure the releases, but in executing the liens in the first instance and thus dealing with the property as his own after notice of a breach of the contract by Kluck. In the case of Van Abel v. Wemmering, 33 S. D. 544, 146 N. W. 697, 699, the Supreme Court of South Dakota had under consideration a case in which the vendor on March 2d, after notice of a breach of the contract by vendee on March 1st, executed a mortgage on the property. This mortgage had been released at the time of the trial. The court there said: " * * * It is the contention of appellant that the giving of said mortgage on March 2, 1912, by respondent, as owner of said land, was in violation of the terms of said contract, and had the legal effect of abandoning the right of respondent to specific performance. We are of the view that this contention is well founded. In resorting to the harsh remedy of specific performance, the respondent, in theory, is saying to the court that, by virtue of the provisions of said contract, and the tender of a deed under the terms thereof, the appellant on the 1st day of March, in right and in justice, became the owner of said lands, but has

refused to accept such ownership, and I demand that the strong arm of the law compel him to become such owner by specifically performing said contract. Respondent is proceeding upon the theory that appellant became and should be held to be the owner of said land, from and after the 1st day of March, 1912. After the 1st day of March any voluntary acts of ownership on the part of respondent, solely for his benefit, were inconsistent with the theory of specific performance, and in violation of the right to such remedy. A vendor may destroy his equitable right to enforce the contract by such remedy by conduct inconsistent with its terms and injurious to the vendee. Where the vendee gives notice, or by his acts indicates, that he will not be bound by the contract, and the vendor thereafter gives notice, or by his conduct performs acts inconsistent with his equitable right to enforce such contract, it will be deemed abandonment of strict equitable performance by both parties, so as to defeat specific performance. Pomeroy, Contracts, §§ 425, 426; Knatchbull v. Grueber, 3 Meriv. 124, 16 Eng. Reprint, 48; 39 Cyc. 1388, 1645; James v. Burchell, 82 N. Y. 108. The giving of the mortgage on March 2d was exercising ownership over said land inconsistent with the right to specific performance, and was an apparent acquiescence in the refusal of the appellant to accept the deed, or to be further bound by the contract. It was equivalent to notice to appellant, by respondent, that he also would not be bound by the terms of said contract. The giving of said mortgage was injurious to the rights of appellant in this: That after appellant had notice that respondent thus acquiesced in his refusal to accept the deed, appellant was at liberty to and might change his financial situation, relying upon such acquiescence and abandonment on the part of respondent, and it therefore became immaterial, at the time of the trial, whether said mortgage was then satisfied or not. It was the act of thus exercising ownership, at a time inconsistent with ownership in respondent, that destroyed the right to the remedy of specific performance. * * *" We are of the opinion that the judgment for specific performance of the contract and for cancellation of the notes sued on should be reversed.

The action against the other defendants other than Edmond Leuschner was based upon the allegation that the notes sued on were signed jointly by Edmond Leuschner and his mother, Annie Kate Leuschner; that Annie Kate Leuschner prior to her death conveyed all of her interest in the community estate of herself and her deceased husband to her children (being the defendants referred to) for the purpose of placing it beyond the reach of her creditors. The plaintiff was seeking to hold said children responsible for the debt evidenced by said notes to the extent of the value of the property so received by them.

The jury found that Mrs. Leuschner had no interest in said community estate at the time of the making of such conveyance, and as a consequence the court entered a judgment denying a recovery against said children other than Edmond Leuschner. There does not appear to be any error in this part of the proceeding, and the judgment of the trial court to this extent is affirmed. In all other respects the judgment of the trial court is reversed, and the cause remanded for a new trial.