**H. Carl VANDERVOORT, Jr., Appellant,**

v.

**Lyman S. BREWSTER, Appellee.**

**No. 16362.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 2, 1962.

Rehearing Denied Nov. 30, 1962.

Garrett & Garrett, and John C. Andrews, Fort Worth, for appellant.

Fannin & Fannin, and Oliver W. Fannin, Fort Worth, for appellee.

RENFRO, Justice.

The plaintiff Vandervoort agreed to sell and the defendant Brewster agreed to buy 47½ per cent, or a total of 4,750 shares, of the stock of Green Feeds Company, Incorporated. The defendant paid $5,000 cash and agreed to pay the remaining $45,000 of the purchase price within 60 days.

The contract was dated April 9, 1958. The $45,000 payment was not made by defendant.

On February 1, 1960, plaintiff brought suit against defendant for specific performance.

The question on appeal is whether the trial court, in a summary judgment proceeding, was correct in holding "there is no genuine issue as to any material fact; that under the admitted facts plaintiff by his conduct has precluded himself from a right to specific performance of the contract; and that defendant is entitled to judgment as a matter of law * * *."

The plaintiff contends that there was a fact question as to whether plaintiff's conduct with respect to the stock after defendant's default was reasonable under the circumstances then existing.

We are concerned only with the question of whether plaintiff was entitled to specific performance, and not with any other remedy, if any, he might have had.

The Green Feeds Company, Inc., was incorporated March 15, 1957. At the time of incorporation plaintiff acquired 47½ per cent of the stock, and it was this 47½ per cent he contracted to sell to defendant. Plaintiff was vice president of the corporation, and was one of the three members of the Board of Directors.

On October 2, 1958, the plaintiff, with the other directors, passed a resolution recommending to the shareholders that certain of the assets of Green Feeds be sold to Hydroponics, Inc.

On October 24, 1958, plaintiff, along with the other shareholders, approved the sale to Hydroponics, Inc. On the same day a special meeting of the directors (of which plaintiff was one) authorized the officers to execute the sales contract with Hydroponics, Inc.

The sales contract provided in part that after the sale was consummated "the undersigned, being owners of all corporate stock of Green Feeds" would commence liquidation of the Company and would dissolve the corporation. In paragraph VI of the contract the officers and shareholders agreed to refrain from competing with Hydroponics, Inc., and stated that officers and shareholders joined in the agreement individually. In paragraph VII the officers and shareholders agreed not to divulge trade secrets, etc.

The sale to Hydroponics was consummated November 1, 1958. The "undersigned" mentioned in the sales contract included plaintiff.

All, or practically all, of the assets of Green Feeds were sold to Hydroponics, Inc. After such sale the stock of Green Feeds was worthless.

In a deposition taken on the 7th of September, 1960, plaintiff testified he still owned the 47½ per cent of the stock of Green Feeds.

Green Feeds did no business after the sale of the assets to Hydroponics, Inc.

Green Feeds forfeited its right to do business on January 2, 1959, for failure to pay franchise taxes, and on November 17, 1959, its charter was forfeited.

The sale of the assets of Green Feeds and the forfeiture of its charter occurred prior to the institution of suit by plaintiff against defendant for specific performance.

In Kluck v. Leuschner, Tex.Civ.App., 70 S.W.2d 768, writ refused, it was held that a vendor who intends to insist upon a specific performance must at all times deal with the property in a manner consistent with a sale thereof to his vendee; that he cannot treat the property as his own and deal with it in a manner inconsistent with such sale.

The rule is stated in 37A Tex.Jur., p. 604, § 295, to be "If he (the seller) has placed any portion of the property beyond his power to so deliver he is not entitled to the contract price, for he has himself, in such an instance, departed from the terms of the contract, and is in no attitude to demand full performance by the vendee."

■ In order to prosecute a suit for specific performance it was incumbent upon plaintiff to hold or retain the stock for the defendant. Mulherin v. Brown, Tex.Civ. App., 289 S.W.2d 609.

■ Subsequent to the date defendant had agreed to pay the balance due for the stock, the plaintiff, as a stockholder as well as an officer of Green Feeds, voted to sell the assets of the company, and consummated said sale. There is no indication in the minutes of Green Feeds, or elsewhere, that plaintiff was acting for any one, in so far as the 47½ per cent of the shares in question are concerned, other than himself. He, as a principal stockholder, fulfilled the Green Feeds' promise to Hydroponics, Inc., to dissolve the company by allowing the forfeiture of the charter of Green Feeds by failure to pay franchise taxes. According to his own testimony he still "owned" the stock in question even after he brought the specific performance suit.

Plaintiff's dealings with the stock, after defendant's failure to perform, were not consistent with a sale thereof to defendant. He treated the stock as his own and dealt with it in a manner inconsistent with a sale to defendant.

We agree with the trial court that plaintiff precluded himself from a right to specific performance.

The judgment is affirmed.