**Paul HAMON, Appellant,**

v.

**William M. ALLEN, Appellee.**

**No. 533.**

Court of Civil Appeals of Texas, Corpus Christi.

April 16, 1970.

Rehearing Denied July 28, 1970.

Mahoney, Shaffer, Hatch & Layton, Richard J. Hatch, Corpus Christi, for appellant.

Boone, Davis, Cox & Hale, Owen W. Cox, Corpus Christi, for appellee.

OPINION

SHARPE, Justice.

This suit was instituted by Paul Hamon, appellant, against Dr. William M. Allen, appellee, for specific performance of a contract for sale of real estate situated in Corpus Christi, Texas. Trial was to the court and jury. After both parties rested, appellant filed motion to withdraw the case

from the jury and to render judgment in his favor, and appellee filed motion for directed verdict or to take the case from the jury and render judgment for appellee. The trial court granted appellee's motion, refused that of appellant and rendered judgment that appellant take nothing by this suit.

Appellant asserts three points of error as follows:

### "APPELLANT'S FIRST POINT

"The trial court erred in refusing and failing to grant plaintiff's motion for judgment and grant to plaintiff specific performance as prayed for therein.

### APPELLANT'S SECOND POINT

"The trial court erred in granting defendant's motion for judgment and rendering judgment for defendant that plaintiff take nothing.

### APPELLANT'S THIRD POINT

"The trial court erred in failing and refusing to allow the introduction as evidence certain portions of the deposition of the defendant wherein the defendant explained and stated the reasons he had not performed on the subject contract."

In reply to appellant's first two points, appellee contends that appellant was not entitled to specific performance for the following reasons: (1) That there was no valid and subsisting contract between the parties, (2) that the contract was unenforceable, (3) that appellant was in default under the contract, (4) that appellant failed to make proper tender of performance, (5) that there was no showing of appellant's ability to deliver a proper deed to appellee, and (6) that appellant treated the property as his own after suit was brought. We are of the opinion that appellee's above-stated contentions 3–6 are well taken and require affirmance of the judgment.

Grounds 5–10 of appellee's motion for directed verdict and judgment read as follows:

"5. That plaintiff has failed to prove, within the time limitation fixed by the contract and the letter of January 20, 1969, from Mr. Hatch, that he had complied with all the provisions of the purported agreement signed by this defendant and the plaintiff.

6. That plaintiff and his wife were, at the time the purported contract was signed by plaintiff and defendant, occupying the premises in question, as their homestead. That no conveyance of a homestead can be consummated without the wife's signature duly acknowledged. Mr. Hamon's wife did not, at any time, execute a warranty deed of the real property involved, in accordance with the purported contract, in that she never did execute such a deed conveying the real property to Dr. Allen.

7. That the real property here involved, being the homestead of plaintiff and his wife, cannot be conveyed by plaintiff alone, and since his wife's signature is necessary, this defendant could not enforce the contract against plaintiff. Consequently, there is not mutuality of remedy.

8. That plaintiff has failed to make proper tender to this defendant of the several obligations which he was required to comply with in accordance with the provisions of the purported agreement for the sale of his property such as a proper warranty deed, title insurance, clear title, prorated items, and other obligations set forth in the contract, and which would be necessary in order to properly consummate the transaction.

9. That plaintiff was, on the 16th and 17th of January, 1969, and still is in default under the terms of the agreement, in that at the closing date of January 16, 1969, and the ultimate date of January 24, 1969, which was obviously a final date set by plaintiff for closing, had never made available a warranty deed which would convey the property

to the proper party, to-wit, Dr. Allen, alone, and plaintiff was in default in other respects.

10. That plaintiff has never placed himself in a position to pursue the remedy of specific performance in that he has treated the property, in every respect, as entirely his own, and he has done so since the 17th day of January and since the 24th day of January, 1969, and plaintiff is, as of the date of this trial, treating the property solely for his benefit and in a way inconsistent with the theory of specific performance."

Appellant contends that under the undisputed facts he was entitled as a matter of law to specific performance of his written contract with appellee. The material facts will be briefly summarized. Appellee, Dr. William M. Allen, desired to purchase a new home on Ocean Drive in Corpus Christi, Texas, and secured the services of a realtor to aid him in this endeavor. Appellee's realtor, Forrest Allen Company, contacted appellant in such respect and after some negotiations as to price, a contract dated December 18, 1968, was entered into by and between appellant Paul Hamon, Trustee, as seller, and appellee Dr. William M. Allen, as purchaser. The contract, among other things, contained the following condition:

"Conditioned upon securing a twenty-five (25) year conventional seven (7%) percent approved mortgage loan in the amount of Forty Eight Thousand Three Hundred ($48,300.00) Dollars."

The appellee on December 5, 1968 had made application for a loan to First Savings Association of Corpus Christi, Texas and the same was approved on December 17, 1968 in the above-stated amount.

Mary Ann Hodges and Betty Jurecko of San Jacinto Title Company testified as witnesses on behalf of appellant. Mary Ann Hodges testified in substance that the written contract between the parties was deposited with the title company on December 19, 1968 as required by it. Mrs. Jurecko testified in substance as follows: That she received a check for Forty Eight Thousand Three Hundred ($48,300.00) Dollars from First Savings Association. Certain instruments in connection with the proposed sale and transfer of the property were prepared either by Mrs. Jurecko or under her direction or by an attorney. These instruments included a warranty deed reserving vendor's lien from Paul Hamon, individually and as Trustee, and his wife Dorothy Hamon, as grantors, to William M. Allen and wife Mary Allen, as grantees, a note in the amount of $48,-300.00 payable to First Savings Association in installments with signature lines for Dr. William M. Allen and wife Mary Allen, and a deed of trust to secure the note, also with signature lines for Dr. William M. Allen and Mary Allen. Mrs. Jurecko further testified that the plaintiff, Paul Hamon and his wife, Dorothy, came by the title company and executed the warranty deed dated January 15, 1969 and their acknowledgments were taken by her on the 15th and 16th of January, 1969. Thereafter, someone at the title company called appellee's office and advised him that the matter was ready for closing and that he should come by and execute certain instruments. Appellee, Dr. Allen, went to the title company on January 16, 1969, the date called for closing under the terms of the contract, but did not sign the papers on such date. He returned the following day and executed the promissory note in the sum of Forty Eight Thousand Three Hundred Dollars ($48,300.00), a deed of trust to secure that note and a closing statement. A cash payment of Fifteen Thousand Three Hundred Thirty Five Dollars and Eighty Eight Cents ($15,-335.88) was required and Dr. Allen delivered his check to the title company in that amount. After executing the documents on Friday, January 17, 1969 at the title company, appellee advised its representative to call his wife, Mary Allen, and she would also come by the title company to sign the documents. Mrs. Jurecko

further testified that on January 16, 1969 when Dr. and Mrs. Allen came in, she, as a representative of the title company was prepared and willing to issue a guaranteed title policy on the property. However, she further testified in substance that there was an outstanding lien against the property and she was not in position to issue the policy at the time Dr. Allen signed the papers and would not have been until Mrs. Allen signed them. Mrs. Jurecko further explained that the outstanding lien would have been discharged by payment out of the funds in escrow and a release of same would be obtained after the transaction between the parties was closed. When the title company representative contacted Mrs. Allen, she advised that she did not want to go through with the contract. On Friday, January 17, 1969, after hearing from his wife and her objection to purchase the home, Dr. Allen stopped payment on his check and on Monday, January 20, 1969, went to the title company and demanded the return of his check. On the last-mentioned date appellant's attorney wrote a letter to appellee, which reads as follows:

"January 20, 1969

"Dr. William M. Allen
3216 Reid Drive
Corpus Christi, Texas

Re: Closing of real
estate sale
Paul Hamon, et ux to
William M. Allen, et ux
Lot 5, Block 2
Alta Vista Cliffs
3628 Ocean Drive

Dear Dr. Allen:

Please be advised that this firm represents Mr. and Mrs. Paul Hamon in the above referenced matter which has been referred to this office for attention. According to the contract between the parties, the matter should have been closed on or before January 16, 1969. The title company advises me that they are ready to issue a title policy as required by the contract. Mr. and Mrs. Hamon have executed all papers necessary for closing. In addition, I am advised that the mortgage conditions stated in the contract were actually met prior to the execution of the contract and should be no hinderance to the closing of the same.

As you know, Mr. Hamon has leased a second home in anticipating you moving from the one following the closing of this transaction. It is therefore imperative that we be advised of your intentions and that this matter be closed immediately.

I have discussed this matter with Mr. Owen Cox and I am led to believe that the holdup in Mrs. Allen refusing to sign the note and Deed of Trust which, of course, is standard Texas form and one supplied by the lender, First Savings Association. The only other objection I have heard is that you did not desire to pay the sum of money set forth in the contract. Neither of these objections have any legal validity and you are hereby requested to take the necessary action to close this matter by Friday, January 24, 1969. Unless this matter is closed as required by the contract, my clients have requested that I file suit for specific performance to enforce the same. If you have any valid legal objection to the

contract, I think ordinary courtesy and professional ethics dictate that you advise us in writing immediately.

Very truly yours,

Richard J. Hatch

RJH: jm
cc: Mr. Owen Cox
Attorney at Law
610 Wilson Tower
Corpus Christi, Texas 78401

San Jacinto Title ·Company
P.O. Box 6725
Corpus Christi, Texas

Mr. and Mrs. Paul Hamon
1382 Santa Fe
Corpus Christi, Texas

First Savings Association
Six Points
1660 South Staples
Corpus Christi, Texas"

———◆———

We will first consider the question as to whether the appellant was in default under the contract. The contract sued upon by appellant was between Paul Hamon, Trustee, as Seller, and Dr. William M. Allen, as Purchaser. Dr. Allen's wife, Mary M. Allen, was not a party to it. Under the terms of the contract, Paul Hamon, Trustee, agreed "to convey unto Purchaser by General Warranty Deed" certain described real property in Nueces County. Singular language is used in referring to the purchaser. Paul Hamon, Trustee, agreed further "Upon approval of said title for title insurance * * * to deliver a good and sufficient general warranty deed drawn in accordance with the provisions of this contract, properly conveying said property to said Purchaser." There was nothing in the contract calling for Paul Hamon, Trustee, to convey an undivided one-half interest or any other interest in the property to Mary M. Allen. The purchaser, Dr. William M. Allen, according to said contract, agreed to "make the cash payment, and execute the note and Deed of Trust." The

contract did not create any obligation on the part of Mary M. Allen to sign those instruments. The provision regarding the obtaining of a loan did not contain any language which purported to place any responsibility on Mary M. Allen. It is established that the papers in connection with the transaction were not prepared "in accordance with the provisions" of the contract. The warranty deed was written so as to convey the real property described therein, to "William M. Allen and wife, Mary M. Allen" as grantees, and recited, as a part of the consideration "the execution and delivery of the said Grantees of their one certain promissory note * * * for the principal sum of * * * ($48,300.00)." It is important to note that Mary M. Allen, although the wife of appellee, was also an individual, who, under the 1967 Amendment to the Statutes concerning married women (Art. 4613, et seq., Vernon's Texas Civil Statutes, without reference to the new Texas Family Code effective January 1, 1970) had rights independent of her husband. Her interest in the real property covered

by the deed could very well have been greater by including her name as a grantee than if her name had not been included. The deed further referred to a note to be executed by Mrs. Mary M. Allen, although she did not execute the contract and at no time agreed to execute the note. The promissory note, which only Dr. William M. Allen had agreed to execute, was prepared so as to obligate William M. Allen and also Mary M. Allen. The note was to be secured by a deed of trust which William M. Allen had agreed to sign, but this instrument was also prepared to bind and obligate both William M. Allen and Mary M. Allen.

Appellee contends that it is thus conclusively established that appellant had not complied with his obligations under the provisions of the contract at the time Mrs. Allen refused to sign; that the fact that Dr. Allen signed the note and deed of trust at the time when he thought his wife wanted the 'house does not relieve appellant of his duties under the contract; that since appellant had not performed his obligations provided for by the instrument, appellee could properly refuse to go forward with the transaction unless appellant timely cured his default.

■■■ The primary rule which is applicable here is reiterated in the case of Walker v. Central Freight Lines, Inc., 382 S.W.2d 125 (Tex.Civ.App., San Antonio, 1964, wr. ref. n. r. e.), wherein the court said:

"A party is not entitled to the equitable remedy of specific performance unless he shows that he has diligently and timely performed or complied with all of his obligations, and this is true though the other party has stated he will not carry out the contract."

Citing Corzelius v. Oliver, 148 Tex. 76, 220 S.W.2d 632 (1949); Witte v. Barry, 16 S.W.2d 548 (Tex.Civ.App., Waco, 1929, n. w. h.); Terrell, Atkins & Harvin v. Proctor, 172 S.W. 996 (Tex.Civ.App., San Antonio, 1915, n. w. h.); Brown v. Binz, 50 S.W. 483 (Tex.Civ.App., San Antonio, 1899, n. w. h.). It is also settled that:

"Granting relief by way of specific performance is a matter of grace and not of absolute right. The determination rests in the sound discretion of the court, and its action will not be disturbed on appeal unless an abuse of discretion is shown. The discretion, however, is a judicial one, controlled by established doctrines and settled principles of equity. Hence, it may not be capriciously and arbitrarily exercised." 52 Tex.Jur. 2d, Specific Performance, p. 541, § 21 and cases therein cited.

■■■ It appears here that appellant was not only in default in the performance of his obligations under the contract at the time appellee's wife refused to sign the note and the deed of trust, but continued to be in default on the date of the final closing deadline of January 24, 1969, as fixed by his attorney in the letter addressed to Dr. Allen dated January 20, 1969. As of January 24, 1969, no change had been made in any of the papers. The deed, the note and the deed of trust were the same as when Dr. Allen signed and when Mrs. Allen refused to sign. No effort had been made by appellant to remedy his defaults at the time the attorney's letter was written or at any time on or prior to the deadline fixed by it.

■■■ It is thus established here that on January 24, 1969, the date for closing established by appellant, that he had failed to comply with all of his obligations under the terms of the contract. However, even if time was not the essence of the contract and January 24, 1969 was not the final closing date so that appellant could thereafter pursue the remedy of specific performance, it was appellant's burden to show that he furnished a proper deed. Appellant failed to tender a proper general warranty deed to Dr. William M. Allen as grantee to which he was committed by the language of the contract of sale. The deed presented

by appellant had to be tested on its own terms and according to whether it was or was not a good and proper deed as stipulated in the agreement. See Voges v. Krezdorn, 127 S.W.2d 937 (Tex.Civ.App., San Antonio, 1939, n. w. h.), a case in which specific performance was denied. If appellant was in default on the last day available for compliance with his obligations under the written instrument, he is precluded from enforcing specific performance. But if not so precluded because of the time element, appellant has still failed to establish herein that he has complied with such obligations so as to enforce the remedy of specific performance. At no time during the trial of this cause did appellant tender a proper deed conveying the real property involved or offer evidence of approval of title by the attorneys for the title company.

■ Although the evidence shows that the warranty deed, dated January 15, 1969, purporting to convey the real property to William M. Allen and his wife, Mary M. Allen, had been executed by appellant Hamon and his wife, Dorothy Hamon, nevertheless, Mrs. Hamon did not testify and there is no evidence that she would have executed another deed conveying the property to Dr. Allen alone. The property was the homestead of the Hamons and could not have been conveyed without Dorothy Hamon's signature duly acknowledged. Appellant Hamon, after Mrs. Allen refused to execute the note and deed of trust, made no effort to offer to appellee a proper general warranty deed conveying the real property to only William M. Allen, in accordance with the provisions of the purported written contract of sale. No such proper deed was ever executed by Mrs. Hamon, causing a legal obstacle which prevents appellant from complying with the obligation to deliver a proper general warranty deed to Dr. Allen, and there was no competent proof that such obstacle could or would have been removed. See Milliken v. Townsend, 16 S.W.2d 259 (Tex.Com.App., 1929).

Appellee also contends that the evidence also conclusively establishes that appellant has, since prior to bringing this suit, treated the property described in the written instrument above discussed as exclusively his own and by his conduct has denied that appellee had any sort of interest in the property; and that by such actions appellant was and still is precluded from bringing and maintaining this suit for specific performance to make appellee pay for said property. The evidence conclusively shows that appellant Hamon, prior to the commencement of the trial of this case, started advertising the property for sale. He signed an agreement with a multiple listing organization about 30 to 45 days prior to the trial, by which for 120 days the realtors belonging to the organization could try to sell the property. The property was advertised for sale in the newspaper and a multiple listing sheet showing the sale price of $68,500.00 was furnished to all realtors in the organization. At the time of trial the property was still subject to multiple listing and appellant Hamon was obligated to honor the agreement. At the time of the trial appellant testified that he considered himself to be the owner of the property and to be in position to then sell it to anyone he wanted to.

■ A suit for specific performance in a case of this sort is really an attempt to require the purchaser to receive a deed to and pay for property he actually already owns. Under the circumstances, appellant Hamon, the day he was on the witness stand, would have expected to sell the property for $68,500.00 had a realtor brought him a purchaser.

In Kluck v. Leuschner, 70 S.W.2d 768 (Tex.Civ.App., Waco, 1934, wr. ref.) the court reversed a decree which ordered specific performance of a contract for the sale of land and for cancellation of certain notes, holding in part as follows:

"Upon the breach or repudiation of a contract of sale by a vendee, ordinarily the vendor has his election as to whether

he will treat the contract as breached and sue for the damages, or insist upon a specific performance thereof; but in order to be entitled to specific performance he must be and remain at all times ready, able, and willing to perform his part of the contract. The right to specific performance is one which may be waived or abandoned and abandonment may be inferred from the circumstances or the conduct of the parties showing an intention inconsistent with performance. Such vendor who intends to insist upon a specific performance must at all times deal with the property in a manner consistent with a sale thereof to his vendee. He cannot treat the property as his own and deal with it in a manner inconsistent with such sale and thus speculate on the improvement of his position and thereafter insist upon a specific performance of the contract by the vendee. 58 C.J. 909, 981; Whittenburg v. Groves (Tex. Com.App.) 208 S.W. 901; Community of Priests v. Byrne (Tex.Com.App.) 255 S. W. 601; De Cordova v. Smith, 9 Tex. 129, 58 Am.Dec. 136; Van Abel v. Wemmering, 33 S.D. 544, 146 N.W. 697; King v. Walrath, 313 Ill. 551, 145 N.E. 94."

Kluck also cited with approval the case of Van Abel v. Wemmering, 33 S.D. 544, 146 N.W. 697 (1914), in which the Supreme Court of South Dakota held that the vendor could not successfully pursue the remedy of specific perfomance, and in part said:

" * * * In resorting to the harsh remedy of specific performance, the respondent, in theory, is saying to the court that, by virtue of the provisions of said contract, and the tender of a deed under the terms thereof, the appellant on the 1st day of March, in right and in justice, became the owner of said lands, but has refused to accept such ownership, and I demand that the strong arm of the law compel him to become such owner by specifically performing said contract. Respondent is proceeding upon the theory that appellant became and should be held to be the owner of said land, * * *"

* * * * * *

" * * * The giving of the mortgage on March 2d was exercising ownership over said land inconsistent with the right to specific performance, and was an apparent acquiescence in the refusal of the appellant to accept the deed, or to be further bound by the contract * * * it therefore became immaterial, at the time of the trial, whether said mortgage was then satisfied or not. It was the act of thus exercising ownership, at a time inconsistent with ownership in respondent, that destroyed the right to the remedy of specific performance * * *."

The Court in Kluck did not indicate it was necessary for title to the real property involved to be placed out of the reach of the purchaser or that its condition be so changed as to make it impossible for the purchaser to secure title as provided by the original contract. The court was concerned with any voluntary acts of ownership on the part of the seller, solely for his benefit, which were inconsistent with the theory of specific performance, and in violation of the right to such remedy.

In Vandervoort v. Brewster, 361 S.W.2d 955, 956 (Tex.Civ.App., Ft. Worth, 1962, n. r. e.) the court, in an action for specific performance of a contract to purchase stock, in discussing Kluck said:

"In Kluck v. Leuschner, Tex.Civ.App., 70 S.W.2d 768, writ refused, it was held that a vendor who intends to insist upon a specific performance must at all times deal with the property in a manner consistent with the sale thereof to his vendee; that he cannot treat the property as his own and deal with it in a manner inconsistent with such sale."

And the court, in deciding that the vendor was not entitled to maintain his suit for specific performance, took into account that "In a deposition taken on the 7th of September, 1960, plaintiff testified he still owned the 47½ per cent of the stock of

Green Feeds." Although in *Vandervoort* the assets of the corporation were disposed of, the decision turned on the vendor's "testimony he still 'owned' the stock in question even after he brought the specific performance suit" and that "Plaintiff's dealings with the stock, after defendant's failure to perform, were not consistent with a sale thereof to defendant. He treated the stock as his own and dealt with it in a manner inconsistent with a sale to defendant."

In this case it is established that appellant Hamon treated the property as his own and dealt with in a manner inconsistent with a sale to appellee or enforcement of specific performance.

Although appellant does not assert a specific point of error relating to the subject, he argues under his points one and two that the questions of waiver or abandonment of appellant's alleged right to specific performance were not raised by the pleadings. We are inclined to the view that appellee's pleadings are probably sufficient in such respects in the absence of special exceptions. However, it appears in any event that the issue of whether appellant treated the property as his own and dealt with it in a manner inconsistent with a sale to appellees so as to defeat specific performance was tried without objection and at least by implied consent. At the time appellee offered in evidence appellant's newspaper advertisement of sale and a copy of the multiple listing information concerning the property involved, counsel for appellant specifically stated that there was no objection in each instance. Under Rules 67 and 90 Texas Rules of Civil Procedure, appellee's failure to comply with Rule 94 T. R.C.P., would not be controlling and the trial court could properly consider and decide the issue of waiver in the light of appellee's motion for directed verdict: See McDonald, Texas Civil Practice, Sections 5.18, 7.38 and cases therein cited.

Appellant's third point does not present error or reversible error, particularly in the light of our holdings in connection with appellant's first two points. Exclusion of the deposition testimony of appellee offered by appellant was harmless in any event. That point is overruled.

The judgment of the trial court is affirmed.

NYE, Justice.

I respectfully dissent.

This is a contract suit. The plaintiff Paul Hamon sued Dr. William M. Allen for specific performance of a written contract for the sale and purchase of a home. The trial was to a jury; however, the court rendered judgment denying plaintiff Hamon's motion for judgment of specific performance and granted defendant Allen's motion for judgment, without submitting the case to the jury.

The remedy of specific performance is purely equitable. The purpose of granting specific performance should be primarily for the protection of the plaintiff but the equities of the defendant should also be respected since the supreme object is the attainment of complete justice between the parties. 52 Tex.Jur.2d, Specific Performance, §§ 2 and 147.

The question whether or not a plaintiff will be granted specific performance ordinarily rests in the sound judicial discretion of the court based on the circumstances of the case; but where there is no misunderstanding on the part of the vendee and no misrepresentation on the part of the vendor, specific performance may be granted as a matter of right. The defendant should not be permitted to rely on his own default as a defense. 81 C.J.S. Specific Performance § 63, p. 564.

The purpose therefore of specific performance is to compel the defendant to do the very thing his duty and the plaintiff's primary rights require of him. 52 Tex.Jur. 2d, Specific Performance, § 7.

The salient facts leading up to the execution of the contract in question are unquestioned. The terms of the agreement

are not disputed by either party. There is no contention that there was evidence of fraud or misrepresentation as a basis for defendant's refusal to perform the contract as he had agreed. The plaintiff was ready and willing to perform throughout. The suit for specific performance was based on the contract. Therefore, details of the contract and of the facts leading up to the repudiation by defendant are important to the decision of this case, as they show the lack of any equitable or legal basis justifying the defendant's refusal to honor his commitment. In determining whether specific performance should be granted the court will, in a large measure, judge the contract as of the time of its execution. 52 Tex.Jur.2d, Specific Performance, § 20.

The defendant was desirous of purchasing a new home on Ocean Drive. He secured the services of a realtor to aid him in this endeavor. The plaintiff was the owner of such a home but had never offered his home for sale. Defendant's realtor contacted plaintiff in an effort to purchase his property for defendant. After a series of negotiations between the parties, an agreement for the purchase and sale of plaintiff's property was reached which was reduced to writing and executed by both parties. This agreement was on a printed form furnished by the title company. It was filled out in all details. In addition to providing for title insurance, realtor's commission and closing instructions, the contract contained the usual and customary provisions for the sale and purchase of real estate. Special provisions not covered by the contract were typed in.

The contract described the property by lot, block, subdivision and the common street address. The property to be conveyed included the land and all improvements, as well as certain specified items of personal property. The purchase price was $63,500.00, made up by payment of $9,200.00 cash, the securing of a 25-year 7% loan of $48,300.00 and the balance of $6,000.00 to be carried by the plaintiff at 7% interest until defendant could sell his present home.

The contract stated that the defendant was to assume the payment of any street, sidewalk and paving assessments. It provided for the plaintiff to paint the wood trim on the house at plaintiff's expense. The contract specified that the property was to be termite inspected; and a warranty be issued by a reputable termite company. If the inspection revealed any damage to the house it was to be repaired at plaintiff's expense. The contract provided further that $1,000.00 earnest money should be deposited by defendant with the title company and that if the contract was not placed in the hands of the title company by the 19th day of December, 1968, the contract would be null and void.

The contract was executed on the 18th day of December, 1968 and was delivered and received by the title company on the 19th. The $1,000.00 escrow payment was paid by the defendant and received by the title company. The contract stated:

" * * * Should the Purchaser fail to consummate this contract as herein specified for any reason, (except (1) title defects, (2) or in the event that Purchaser is unable to perform by reason of his inability to obtain the above named financing, in either event the said earnest money will be refunded in full to the Purchaser), otherwise, Seller shall be entitled to receive said cash deposit as liquidated damages for the breach of this contract, *or he may at his option enforce specific performance hereof.* * * " (emphasis supplied)

Prior to the final execution of the above contract the defendant and his wife made preparations to purchase plaintiff's property. On December 5 they made application with the First Savings Association of Corpus Christi for a conventional mortgage loan in the amount of $48,300.00 for a term of twenty-five years with interest at the rate of 7%. As a part of their applica-

tion, the defendant and his wife described the plaintiff's property as the property that they proposed to purchase, and specified the exact sales price. The loan application contained the defendant's financial statement and his agreement to pay the charges incurred by the Association in making the loan. The record does not show that the plaintiff had any knowledge that the defendant and his wife had made the joint application for such loan. However, when the loan was approved, the note, deed of trust and check in the amount of $48,300.00 was delivered to the title company with instructions directing the title company to secure the joint signature of the defendant and his wife, on the note and deed of trust. The title company then drew up a deed from plaintiff and his wife as grantors to the defendant and his wife as grantees. They prepared the deed of trust, note and closing statement for the defendant and his wife to execute. The plaintiff and his wife went to the title company first. They duly executed the deed and their separate acknowledgments were taken by the title company's notary.

The title company then notified the defendant that all of the papers had been prepared and that the transaction was ready to be closed. On Thursday, January 16, 1969, the defendant went to the title company and inspected the papers, including the warranty deed executed by plaintiff and his wife. Witnesses from the title company testified that the defendant made a number of inquiries relative to closing costs, etc., but made no objections to the substance or form of the transaction. The record further shows that defendant had benefit of counsel and even discussed the transaction with his attorney on Thursday or Friday before he executed all the papers on Friday, January 17. In addition to signing the 25-year, 7% promissory note, he executed and acknowledged before a notary, the deed of trust. He signed and approved the title company's closing statement and ratified its proposed disbursement of funds. Finally, the defendant gave

the title company his personal check for $15,335.88 with the written notation made on the check: "Bal. of purchase price & closing costs in connection with purchase of 3628 Ocean Drive." He then instructed the title company to call his wife and tell her to come in and sign the papers.

The defendant admitted at the trial, that at this point he considered he had made a deal with the plaintiff. That his purpose for executing the papers was to close the real estate transaction. However, the facts as later developed, are, that later that same day (Friday, January 17) the defendant had a change in heart because his wife was worried that if something happened to him she would be unable to carry out the mortgage. Whereupon, the defendant stopped payment on the check and repudiated the contract.

The defendant raises ten to fifteen separate contentions in the alternative as his reason for not going through with the contract in question. Two of these contentions are the basis given by the majority of our Court for affirming the trial court's judgment. The defendant has from the outset contended as his basic defense, that the contract was too indefinite and uncertain to authorize judgment of specific performance; citing Bryant v. Clark, 163 Tex. 596, 358 S.W.2d 614 (Tex.Sup.1962). As a corollary to this argument, the defendant plead as his primary contention that, when he received the contract in question he himself modified the contract by inserting "7%", as the type of loan to be obtained and this was never accepted by the plaintiff. His pleadings stated:

"At the time that 'original typed' contract was modified by Defendant, it had already been executed by Plaintiff. The modification by Defendant of the terms of the proposed contract thus offered by Plaintiff, operated as a rejection of such contract and as a counter offer. Such counter offer was not accepted by Plaintiff and has long since expired."

Defendant argues that by the insertion of "7%" after plaintiff had signed the contract constituted, as a matter of law, a rejection of plaintiff's offer and the instrument, after the change, became a new offer by defendant which was never accepted. The defendant argues that the 7% provision is too indefinite, uncertain and vague to be enforceable.

The plaintiff stated during oral argument, without contradiction, that the trial court based its judgment upon the reasoning of the Supreme Court case of Bryant v. Clark, supra. The defendant devotes a greater portion of his brief to this proposition. However, the Bryant case is not applicable to the fact situation before us. The subject contract was definite and certain and called for a sales price of $63,-500.00. It is true that the contract was conditioned upon the defendant obtaining a 25-year 7% loan in the amount of $48,-300.00. However, this was consummated; the terms of which were worked out by defendant and the lending agency. All of the particulars were finally reduced to writing and signed and accepted by defendant. The defendant and his wife made the application for the loan. It was approved, and accepted by the defendant at the time he signed the note and deed of trust. The defendant admitted that the reason he inserted the 7% in the purchase contract was because "this was what we had agreed upon." It did not amount to a rejection of plaintiff's offer.

The defendant contends that he is excused from carrying out the terms of the contract because the plaintiff failed to tender a proper deed at the time of closing. He contends that the deed now has to be tested as to whether or not it was a good and proper deed as specified by the contract between the parties. He contends that since the plaintiff did not tender a proper deed or change the deed of trust and note so as to eliminate the defendant's wife, he is excused. He contends that even if plaintiff was able to tender a proper form of deed, he did not prove that plaintiff's wife would sign a second time.

The testimony was that just prior to January 17, the defendant's wife wanted to execute the deed as prepared on Thursday but had a change of heart on Friday. The warranty deed as tendered by the plaintiff was satisfactory with Dr. Allen in every respect on the date that it was tendered to him and he signed all the papers. It is undisputed that the reason for the wife's name being included in the instruments was because of the lending company's instructions to the title company. This was based upon the fact that the defendant and his wife made a joint application for loan. The loan officer of the lending agency testified that he assumed that the defendant and his wife wanted the property in their names. This was a logical assumption since the defendant made the joint application for the loan. The loan officer testified that he would have given the same loan to Dr. Allen without Mrs. Allen being included; that as far as they were concerned her signature was not necessary. At no time did the defendant ever request that the deed be made to him individually or that Mrs. Allen's name be eliminated. At no time did he agree to honor his commitment after he repudiated. the agreement. Had the papers included only his name and not his wife's on the date of closing, it is reasonable to assume that the entire transaction would have been consummated on January 17, as the defendant had executed everything at that time. Had it not been for the defendant's own action in causing (indirectly) the papers to be drawn in such a way as to include his wife's name, this suit in all probability would not have been necessary. The defendant offers no justification for his refusal to perform as agreed.

The general rule is that a tender of performance must be in substantial compliance with the terms of the contract. However, immaterial variance between a deed offered in performance, and the terms of the contract as to matters in respect of which a court of equity can protect the defendant in its decree, will not preclude the award of specific performance. 52

Tex.Jur.2d, Specific Performance, § 52, p. 589. Even so, readiness and ability to perform may be sufficient in some circumstances without a formal tender or offer of performance, where the party has refused to perform, has repudiated the contract, or has failed to demand performance. 52 Tex.Jur.2d, Specific Performance. § 52, p. 588.

This is a suit on the executed contract after the defendant repudiated it. It was therefore not necessary for the plaintiff to tender a proper deed to the property before suit, where the defendant has refused to accept in any event, or has openly repudiated the contract, or has declared his intention not to perform. Under these circumstances it is sufficient if the plaintiff is ready and willing to perform and offers to do so. 52 Tex.Jur.2d, § 61, p. 600 and see § 120.

The evidence is undisputed that the plaintiff had performed all of the terms of the contract and was ready, willing and able to specifically perform at the time of trial. The plaintiff testified that he had painted the trim on the house at a cost of $250.00. He testified that he had his property inspected by a reputable termite company. He received a letter from the termite company that the property was approved. The contract provided for possession of the property on February 1, 1969, and in this respect plaintiff testified that he had made arrangements for the renting of another home and had already moved some of his property and tools. He testified that he was ready to deliver possession to the defendant as agreed.

The defendant testified that all of the instruments necessary to close the transaction were executed by him before he stopped payment on his check. He admitted that had it not been for his wife's objection, he would have gone through with the transaction. The plaintiff is not required to guess what is wrong with the form of a deed where the defendant misled the plaintiff in effect, and did not state his objection or offer to perform.

Specific performance may be ordered even though there has not been a strict legal compliance with the terms of the contract by the plaintiff, if he has substantially performed and the nonperformance does not go to the essence of the contract. 52 Tex.Jur.2d, Specific Performance, § 60, p. 598. Even where an error in a written contract is a result of the mutual mistake of the parties or of a mistake on the part of the plaintiff or fraud on the part of the defendant, the court may in the same suit perform the contract and decree specific performance of it as reformed. 52 Tex.Jur.2d, Specific Performance, § 156, p. 701. A contract is sufficiently certain to be specifically enforced if it can be made certain by reformation. If this be true as to a contract, it follows that a court of equity can do the same to the tendered deed.

Where as here, a contract for sale of land is in writing, signed by both parties, is certain and fair, is for an adequate consideration, and is capable of being performed without undue hardship, or where a refusal of such relief is not justified, it is as much a matter of course for a court of equity to decree specific performance as it is for a court of law to give damages for a breach of contract. 81 C.J.S. Specific Performance § 63, p. 559.

There was no evidence that the plaintiff was unable to perform the contract as written. There was no competent evidence that plaintiff waived or abandoned his suit for specific performance as contended. The prosecution of the suit to trial and the appeal refutes this contention. There were no pleadings or offer by defendant to amend his pleading at the close of the evidence to raise this defense. At most it would only be a jury issue, as the evidence was not conclusive.

The defendant has made no cross assignments of error. Therefore, the judgment of the trial court should be reversed and rendered for plaintiff.