N. C. KRESS AND WILLIE ROUSE, SR. V.
LUTHER H. SOULES AND FREDERICK C. MARTENS.

No. A-4114. Decided October 7, 1953.
Rehearing overruled November 18, 1953.
(261 S.W. 2d Series 703)

*Corenbleth, Thuss & Jaffe* and *Morris I. Jaffe,* all of Dallas, for petitioners.

The Court of Civil Appeals erred in holding that respondent Soules was entitled to specific performance, for exemplary damages or for damages for rent. Witte v. Barry, 16 S.W. 2d 548; Bell v. Rudd, 144 Texas 491, 191 S.W. 2d 841; Bradley v. Howell, 126 S.W. 2d 547; Hall v. York, 22 Texas 644; Slaughter v. Roark, 244 S.W. 2d 698.

*Wm. Andress, Jr.,* for Soules, *Alexander, George, Russell & Passman* and *Pat Russell,* for Martens, and *Otis Bowyer,* for Currin, all of Dallas, for respondents.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is a suit brought by respondent Soules, the purchaser, against petitioners, Kress and Rouse, the sellers, for specific performance of a contract for the sale of a house and lot in Dallas and for actual and exemplary damages. By an amended petition respondent Martens, to whom petitioners conveyed the property shortly after this suit was filed, and Southern Trust and Mortgage Company, the holder of a lien on the property by assignment of a purchase money note executed by Martens, were made parties defendant. Kathryn Currin intervened, seeking recovery of a real estate dealer's commission on the contract on which the suit is based. The trial court's judgment will be set out in detail below, but in general outline it awarded respondent Soules and intervenor the relief sought by them respectively, and awarded Martens actual and exemplary damages against Kress and Rouse. The Court of Civil Appeals reversed the judgment in favor of the intervenor, Kathryn Currin, and rendered judgment that she take nothing, but affirmed it in all other respects. 255 S. W. 2d 244. Only Kress and Rouse filed an application for writ of error.

Under the view which we entertain of the controlling question presented for decision it becomes unnecessary for us to write on many points of law presented in the application. We are well convinced that, under the facts, the equitable remedy of

specific performance is not available to Soules, and shall therefore limit this opinion to a discussion of that one question.

■ Specific performance of a contract for the sale of realty is ordinarily granted where the suit is based on a valid contract, but it is not a remedy which exists as a matter of right. While it is not an invariable rule that specific performance of a contract to convey real estate will be denied if the plaintiff has an adequate remedy at law, still in weighing the relative hardships to be suffered by the parties as a result of granting that relief, it is an important factor. The authorities agree that one who invokes the jurisdiction of equity to compel specific performance must bring his case within the fundamental principle that the granting of the relief sought will not operate inequitably on the defendant. Bergstedt v. Bender, Comm. App., 222 S. W. 547; Simpson v. Green, Com. App., 231 S. W. 375; 49 Amer. Jur., Specific Performance, § 93; 81 C. J. S., Specific Performance, § 63. In the light of the above principle we shall review the facts disclosed by the record in this case, to determine whether or not they reveal a situation in which the hardships placed upon petitioners by an award of specific performance outweigh the hardships, if any, which will be suffered by Soules by leaving him to his remedy at law. In short, to determine whether the facts make a case in which it would be inequitable to grant the relief of specific performance.

These are the material facts: On January 3, 1950, Kress and Rouse jointly executed a note for $14,000.00 to the Lingo Lumber Company in payment for labor and material going into the construction of a house and other improvements on the lot in suit. Contemporaneously therewith a mechanic's lien was executed by them, in which it was recited that they owned the lot in fee simple. Kress and Rouse then executed the following instrument:

"N. C. Kress, named the first party in this agreement, and Willie Rouse and Son, known as the second party in this agreement agree as follows:

"The first party being the owner of lot 21, Block F 5314, located at 1429 Bella Vista, Dallas, and the second party, being a building contractor, agree to build a house on this lot according to plans made by Jack E. Sears, an architect.

"This house is built for sale and the proceeds from sale should be disposed of as follows:

"The amount of $2,500.00 should be paid to the first party for the lot, the amount of $500.00 will be paid to the second party for their supervision of the building, the remaining part of the proceeds, after covering the mechanics lien of the Lingo Lumber Company, should be considered as profits from this transaction and equally divided between both parties in this agreement.

"Both parties have made the above agreement orally before the mechanics lien has been signed and are confirming same in writing herewith on this 18th day of January 1950."

We find it unnecessary to determine just what interest Rouse acquired by the execution of the contract, the note and the lien, but that definite rights were acquired by him cannot be questioned. Both he and Kress became vitally interested in the sale of the property, and accordingly, after the house was completed, Kress listed it for sale with two separate real estate dealers, one of them being Kathryn Currin, while Rouse listed it with two other dealers.

On July 20, 1950, a contract in writing for the sale of the house and lot at a price of $18,500.00 was entered into by respondent Martens as purchaser and Willie Rouse, Jr., acting as agent for his father, as seller. It will be noted that in the contract between Kress and Rouse, copied above, Rouse's son is named as a party of the second part. On the same day one Mehaffey, an agent of Kathryn Currin, procured Soules' signature to a contract of sale of the same property. By the terms of that contract the purchase price was $17,500.00, $500.00 of which was deposited by Soules with the agent upon the execution of the contract, with the balance payable upon the delivery of the deed. The contract provided that it was contingent upon the purchaser's securing a first lien, twenty year 4½% mortgage for $13,000.00 on the property. Kress was not in Dallas on that day but returned there the next morning. Upon being informed by Mehaffey of the proposed sale to Soules, Kress tried to get in touch with Rouse. Being unable to do so he signed the contract which had been signed the day before by Soules. A few hours later he learned from Rouse of the contract with Martens which had been executed on July 20. Thereafter, Kress, after some difficulty in locating him, got in touch with Soules and informed him of the prior contract which Rouse through his son had made with Martens. He offered to build Soules a similar house in the same area at the same price if he would agree to release him from his contract. Soules refused this offer and insisted on

performance of his contract. On the date this suit was filed by Soules for specific performance and damages, and before Kress and Rouse were served with citation, they conveyed the property to Martens in accordance with the contract of July 20. An amended petition named as additional defendants Martens and Southern Mortgage and Trust Company, which held a lien on the property by virtue of a purchase money note for $13,000.00 executed by Martens and assigned to the company. As above noted, Kathryn Currin intervened, seeking a real estate dealer's commission on the contract with Soules. About a month after filing this suit Soules withdrew the $500.00 which he had deposited with Mehaffey and purchased another home.

In a trial before the court without a jury it was decreed that Rouse had no property interest in the house and lot, and specific performance was granted Soules against Kress alone. Judgment was rendered in favor of Soules against both Kress and Rouse for actual damages of $100.00 per month for the rental value of the property and $750.00 exemplary damages. The actual damages amounted to $2,000.00 at the time of the trial. The judgment then decreed that since Kress had received the proceeds of the $13,000 note executed by Martens and since Soules was entitled to recover $750.00 exemplary damages and $2,000.00 actual damages which had accrued as rental value of the property to the date of judgment, he need tender only $1750.00 to Kress to obtain specific performance.

Martens defended against Soules' suit, and then sought damages against Kress and Rouse in the event specific performance were granted Soules. The effect of granting specific performance to Soules was to cancel the deed executed by Kress and Rouse to Martens and wife. Having decided that Soules was entitled to specific performance against Kress, the court rendered judgment in favor of Martens against Kress and Rouse for $1,500.00 exemplary damages and $6,240.50 actual damages, representing the amount paid in cash by Martens to Kress and Rouse, plus moving expenses and insurance premiums. Martens was also awarded judgment against Soules for $2,806.97, the amount paid by Martens on the purchase money note. The Southern Trust and Mortgage Company was decreed to have a first lien on the property and Kathryn Currin was awarded $875.00 commission. The Court of Civil Appeals reversed and rendered that portion of the judgment awarding a recovery to Kathryn Currin and affirmed same in all other respects.

There is ground for the contention that the contract of sale

between Martens and Rouse, acting through his son, which was executed prior to the contract made the basis of this suit, was binding on Kress. It cannot be doubted that Rouse, who obligated himself on the note for $14,000.00 for the improvement of this lot, had an interest in its sale. Kress recognized that right, and a logical inference from the transactions as a whole would be that Rouse was an agent for the sale of the property. But we do not rest our decision on that ground, for a more certain ground is afforded by the general principles governing the remedy of specific performance announced above.

■ The effect of the judgment authorizing specific performance is to decree that Rouse had no interest in the land, and yet on some theory which we do not understand, he has been cast in heavy damages, actual and exemplary, both to Soules and Martens. Kress has been subjected to damages out of proportion to any injury which Soules could have sustained. Martens and wife had lost title to their home, and Soules has been awarded in this equity proceeding actual and exemplary damages in addition to specific performance, and has been awarded $100.00 per month from date of contract until this judgment becomes final for rental on property in which he has made no investment. He even withdrew the payment of $500.00 which he made to Mehaffey. Further, the judgment placed upon Kress a duty to repudiate the contract executed by his associate, Rouse, with Martens. In our view it would be contrary to the spirit, purpose and office of the equitable remedy of specific performance to hold that it is available in this case.

Kathryn Currin having filed no application for writ of error in this court we shall leave undisturbed the judgment of the Court of Civil Appeals in so far as it decrees that she take nothing. In all other respects the judgments of the trial court and the Court of Civil Appeals are both reversed, and the case is remanded for trial as an action at law for damages. Martens and the Southern Trust and Mortgage Company should be dismissed from the suit.

Undisturbed in part and reversed and remanded in part, with instructions.

Opinion delivered October 7, 1953.

Rehearing overruled November 18, 1953.