W. E. M., INC., Appellant,

v.

Larry WEATHERTON, Appellee.

No. 11712.

Court of Civil Appeals of Texas.

Austin.

Nov. 19, 1969.

Rehearing Denied Dec. 3, 1969.

Mitchell, Gilbert & McLean, Arthur Mitchell, Austin, for appellant.

Maloney, Black & Hearne, Thomas Black, Austin, for appellee.

HUGHES, Justice.

This suit is for specific performance of a contract for the sale and purchase of realty executed by appellant, W. E. M., Inc., as seller and Larry Weatherton, appellee, as purchaser.

In a non-jury trial, judgment was rendered decreeing specific performance of the contract.

Appellant's first point is that the trial court erred in decreeing specific performance of the contract for the reason that the contract is not valid or binding it being uncertain and incomplete as to the time of its performance, as to the consideration for the sale, as to the land to be conveyed, as to the subject matter of the contract, and as to the basic obligations of the parties.

In order to properly appraise this point, it is necessary to set out the pertinent portions of contract:

"SELLER agrees to sell to PURCHASER, and PURCHASER agrees to buy from SELLER, for the consideration and upon the terms and conditions hereinafter set out, the following described property:

Lot Eleven (11), Camelot Section One (1), Travis County, Texas, according to proposed plat which is known to purchaser and seller,

II

PURCHASER agrees to pay as consideration for the purpose of said property the sum of Seven Thousand and no/100 Dollars ($7,000.00), of which Five Hundred and no/100 Dollars ($500.00) has been deposited with Sidney Purser, escrow agent. The balance shall be payable in cash upon the completion of this transaction.

III

Within five days from the date hereof, SELLER agrees to furnish PURCHASER a complete abstract of title, certified from the sovereignty of the soil to the latest practicable date on the above described property, showing good and marketable title in SELLER, subject to covenants, easements and restrictions of record pertaining to said property. PURCHASER agrees that within ten days from the receipt of said abstract to either accept title as shown by said abstract or return the same to SELLER with objections in writing to the title, if any. Failure by PURCHASER to return the abstract with written objections with-

in said time will constitute acceptance of title to said property. In the event written objections are presented as set out herein, SELLER shall cure the same and shall have ten days within which to do so. SELLER, however, shall not be obligated to cure any defects in title unless such requirements can reasonably be met. In any event, at SELLER'S option, SELLER may furnish PURCHASER with a guaranty title policy with a title company of SELLER'S choice in the amount of the purchase price, reflecting good and marketable title in SELLER, upon which this transaction shall be closed.

## V

In the event PURCHASER fails to consummate this transaction for any reason other than title defects, then the earnest money so deposited by PURCHASER shall be retained by SELLER as liquidated damages for such default, or, at SELLER'S option, SELLER may sue for specific performance of this contract. In the event SELLER should fail or refuse to consummate this transaction for any reason, then PURCHASER shall be entitled to specific performance of this contract or the return of the earnest money deposited hereunder and damages for such refusal or failure, at the election of PURCHASER.

## VIII

SELLER and PURCHASER hereby agree to consummate this transaction within five days after SELLER has met the requirements provided herein, the transaction to be consummated by SELLER delivering to PURCHASER a good and sufficient warranty deed to the above described property for the delivery to SELLER by PURCHASER of the consideration above provided.

## IX

SELLER agrees on or before ninety (90) days from date of this contract to construct streets, curbs and gutters according to the requirements of the City of Westlake Hills. SELLER further agrees to install water lines in said subdivision in accordance with the City of Austin requirements. In the event SELLER does not complete the streets, curbs, gutters and water lines within the ninety (90) day period, then PURCHASER at his option shall have the right to return of $500.00 escrow funds and this contract shall thereupon be void. However, in the event SELLER does not complete his obligation within said ninety (90) day period PURCHASER shall have the option of allowing this contract to remain in full force for an additional nine months period during which time SELLER shall have the right to make said improvements. In the event SELLER has not completed said water lines, streets and curbs within said additional nine months period then PURCHASER is hereby given the right to proceed under the terms of this contract except that the purchase price for this property shall be the total sum of $3,500.00. The contract shall thereupon be consummated upon payment to SELLER of the remaining balance due in the sum of $2,500.00.[1] It is understood and agreed that PURCHASER shall pay to SELLER the sum of $175.00 over and above the consideration stated above upon the consummation of this agreement, said $175.00 to cover the costs of installing curbs and guttering."

■ We overrule the contention that the description of the property in the contract was inadequate. The description refers to a plat known to the parties. The evidence shows such plat to have then been in existence; also, the property had been previously surveyed. The lot in suit could be

---

1. This figure fails to take into account the alteration in the down payment from $1,- 000.00 to $500.00. The parties make no point of this.

located on the ground from this plat. When appellant tendered a deed to this property, it was described as "Lot (11) Camelot Section one addition, Travis County, Texas, as recorded in Plat Records of said County, page 50 Vol. 33."

█ It is our opinion that the description of the land was adequate under the rule that a description in a deed is sufficiently definite and certain if it together with a writing in existence and referred to therein permits the land conveyed to be identified with reasonable certainty. Deeds, 19 Tex.Jur.2d, Secs. 123–125.

We also overrule the contention that the consideration to be paid for the land is uncertain or incomplete.

Mr. Sidney Purser, an attorney, who prepared the contract for appellee testified for him as follows:

"As I understood it, the price of seven thousand dollars was to cover the lot as improved. Mr. Winstead was to complete the improvements within ninety days. If he didn't complete them, then he was to proceed to complete them within a year. In this event, if he did it within a year, the price was to remain at seven thousand dollars, but if he took later than a year, then the price of the whole thing was to be thirty-five hundred dollars. As I say, I drew it on the basis that the contract price for the land, improved, would be the thirty-five hundred dollars."

We believe that the contract, as drawn, reflects the understanding and agreement testified to by Mr. Purser.

█ The consideration in paragraph II of the contract is stated to be $7,000.00, with a down payment of $500.00. In paragraph IX of the contract it is provided that if the Seller does not complete certain improvements within one year (90 days + nine months) from the date of the contract "the purchase price for this property shall be the total sum of $3,500.00," plus $175.00 for the cost of installing curbs and guttering.

Language could hardly be used which would more clearly reveal the price to be paid for this property under plainly stated conditions.

█ Also, we are unable to agree with appellant that the time for performance of this contract is incomplete or vague.

Paragraph IX of the contract provides with clarity the obligations and rights of the parties. Appellant was to make certain improvements within ninety days from the date of the contract. If he did not do so, appellee had the option of withdrawing his down payment and rescinding the contract or he could, in effect, grant appellant an additional nine months within which to complete such improvements.

Appellant recites various provisions of the contract such as those relating to the examination of abstracts, title opinions, etc., as well as the provision that the Seller has the option of closing the transaction with a title policy rather than by furnishing abstracts. With reference to the latter provision the record shows that Mr. Clifton S. Winstead, the sole owner of appellant corporation, testified that he understood that if the transaction was completed he would have to furnish a title policy.

Appellant merely states that the above provisions of the contract are ambiguous but he gives no reasons for this conclusion. Unless all option provisions in a contract are, ipso facto, ambiguous, these provisions are patently unambiguous. In fact, they are clear as a limpid stream. We overrule appellant's first point.

Appellant's second point, having four subdivisions, is that the trial court erred in construing that portion of the contract relating to the time for completion of the physical improvements, (A) in holding that Paragraph IX, supra, prescribed a deadline on performance and, therefore, a conditional limitation on appellant's interest in

the property (B) in holding that specific performance should be decreed upon payment of $3,500.00, rather than $7,000.00 (C) in not holding that specific performance be granted upon payment of $7,000.00, with an offset for any damages which appellee could establish, and (D) in not decreeing specific performance upon payment of $7,000.00, since it appeared that appellant had substantially completed the improvements.

■ We overrule (A) and (B) of this point for the reason that the contract is subject to but one construction, the one adopted by the trial court and approved by us.

■ We also overrule (C) under this point. There simply is nothing in the contract to warrant the suggested procedure which, if followed, would violate the express plain provisions of the contract and would, in effect, make a new contract for the parties. We have neither the power nor the desire to do this.

Regarding (D), the evidence is in conflict as to the extent the improvements had been completed upon expiration of the time allowed by the contract. Mr. Winstead testified that the improvements were about 95% completed on this date. However, appellee testified that the improvements were only 60% complete on June 7, 1968, the date on which they should have been completed. The evidence is without dispute that appellant did not commence construction on the streets, curbs, gutters and water lines until January, 1968, about six months after the contract was executed.

It is to be noted that the estimate of completion made by Mr. Winstead was based on his books which he failed to produce in court.

■ We overrule (D) on the ground that the trial court has resolved the conflict in the testimony in favor of appellee, and that 60% completion is not substantial completion.

■ Appellant's third point is that the enforcement of this contract would be harsh and inequitable because the consideration is grossly inadequate.

Appellant supports this point by testimony to the effect that the cost of this land with the improvements to it is $5,480.00; that the market value of the land without improvements when the contract was signed was $4,000.00, and that the market value of the land with improvements in June, 1968 was $12,000.00.

Mr. Winstead testified:

"Q Mr. Winstead, you were satisfied with the contract when you entered into it, weren't you?

A Yes, sir.

Q And you did agree to finish the streets and gutters within ninety days, did you not, sir?

A Yes, sir.

Q So you must have thought that that was a reasonable time?

A Yes, sir."

Appellee testified that the reason for inserting the deadline as to completion of streets etc. was that he wanted to begin construction of a home on the lot as soon as possible; that he and his wife and three children were living in a two-bedroom home and that this was "not at all comfortable;" that he was anxious for the children to start school in the new district in September, 1968. Appellee also testified that building costs had gone up "quite a bit from a year or so ago," and that it would cost "quite a bit more" to build a house because of the delay encountered through the fault of appellant.

We overrule this point. The law to be applied is stated in Simpson v. Green, 231 S.W. 375, Tex.Com.App. (1921) from which we quote:

"The rule with reference to enforcement of contracts for the sale of real

estate by decree for specific performance is laid down in 25 R.C.L. p. 271, § 72, as follows:

'Specific performance is granted to a greater extent in cases of contracts respecting real property than in cases respecting personal property. While in the latter case the jurisdiction to grant it is limited to special circumstances, in the case of real estate specific performance is decreed almost as a matter of course when the contract has been properly established and is unobjectionable in any of its features which address themselves to the chancellor's discretion. Under such circumstances the vendee is entitled to have the contract specifically enforced irrespective of his right to recover damages for its breach.'

The effect of inadequacy of consideration in determining whether specific performance will be decreed is stated in section 10, p. 208, of the same authority, as follows:

'It is, however, the generally accepted rule, both in England and this country at the present time, that mere inadequacy of price does not in itself constitute a sufficient reason for a court of equity to withhold specific performance of the contract.'

The rule with reference to inadequacy of price is thus stated in 36 Cyc. p. 609:

'In the language of a leading case, "unless the inadequacy of price is such as shocks the conscience, and amounts in itself to conclusive and decisive evidence of fraud in the transaction, it is not itself a sufficient ground for refusing a specific performance;" or, to state the rule more in accordance with modern conceptions of fraud, inadequacy of consideration or of the subject-matter, standing alone as a defense, must be so gross as to lead to an inference, satisfactory to the court, of fraud or mistake in the making of the contract'—citing authorities.

The rule with reference to the effect of hardship in the contract sought to be specifically enforced is thus stated in section 22, p. 224, 25 R.C.L.:

'Although courts of equity may decline to enforce those contracts which are inequitable or unfair, it is not their province to undo a bargain merely because it is hard. The courts are not concerned with the question of the wisdom of bargains of persons competent to deal with their own affairs, and hardship will not ordinarily prevent specific performance of a contract which was fairly and justly made, when it results from miscalculation or from contingencies which might have been foreseen, and for which the complainant is not at fault'—citing authorities.

The Supreme Court of Missouri, in the case of Evans v. Evans, 196 Mo. 1, 93 S.W. 969, 975, held that the purchase of property worth $5,000, for $2,600 was not so inequitable as to prevent specific performance, notwithstanding the purchase was by an uncle and it was claimed that he knowingly misrepresented the value of the lands to his nephews to secure the trade.

All circumstances in evidence must be taken into consideration in determining whether specific performance in a given case would be inequitable."

To the same purport is Bennett v. Copeland, 149 Tex. 474, 235 S.W.2d 605.

The circumstances of this case are not such as to shock the Court's conscience in enforcing this contract between the parties which was freely and fairly made.

The judgment of the trial court is affirmed.