M. K. HAGE, Jr., Appellant,

v.

WESTGATE SQUARE COMMERCIAL, a Joint Venture, Appellee.

No. 6066.

Court of Civil Appeals of Texas, Waco.

April 24, 1980.

Rehearing Denied May 15, 1980.

James R. Meyers, Robinson, Felts, Meyers, Starnes & Latting, Austin, for appellant.

Charlie D. Dye and Scott R. Kidd, Brown, Maroney, Rose, Baker & Barber, Austin, for appellee.

HALL, Justice.

This is a suit by the vendor for specific performance of a contract for the sale of land. Judgment was rendered in the vendor's favor, and the vendee appealed. We affirm.

Appellee Westgate Square Commercial is a joint venture formed by Richard Nichols and Equity Investors, Inc., to acquire and develop 10.47 acres of unimproved land located near the intersection of Lamar Boulevard and Ben White Boulevard in the City of Austin, Texas. On February 25, 1977, Westgate and appellant M. K. Hage, Jr., executed an earnest money contract under which Westgate agreed to sell and Hage agreed to buy 6.96 acres of the 10.47 acres for the total price of $500,243.00. The 6.96 acres were specifically described in the contract. An earnest money deposit of $25,000.00, which was a part of the purchase price, was made by Hage. The contract expressly provided that time was of the essence, that it was to be closed within 30 days from the date of execution, and that Westgate would convey good and marketable title to the 6.96 acres by general warranty deed.

The contract was never closed by the parties. In June, 1977, Hage informed Westgate that he did not intend to honor the contract. On August 2, 1977, Westgate filed this suit for specific performance. Westgate also sought other relief which we shall notice later. Hage's answer included a general denial and also special pleas setting up defenses based upon the statute of frauds, the fact that the contract was not closed within the 30 days provided therefore, and the asserted inability of Westgate to convey marketable title to the land because of a right-of-way easement and an unreleased lien and restrictions on the property which allegedly prohibited the parties' contemplated use of the property by him. Westgate's response to Hage's answer included allegations that Hage waived the closing provision because he requested and agreed to extensions, and that Hage was

estopped from now asserting any objections to the title because none were raised by him prior to his alleged abandonment of the contract.

The case was tried to the court without a jury. Judgment was rendered decreeing specific performance of the contract. Hage brought this appeal.

■ In view of the contractual provision that "time is of the essence," Hage contends that the court erred in failing to hold that the contract is unenforceable since it was not performed within 30 days after execution, the time provided for closing. We overrule this contention.

Hage's primary purpose in buying the 6.96 acres was to build a high-rise medical facility. This facility would occupy approximately five acres. Hage intended to hold the other two acres for future speculation. He was interested also in purchasing other property in the area of the 6.96 acres which was not owned by Westgate. There is evidence that beginning in mid-March, 1977, Westgate made numerous attempts to get Hage to establish a closing date. Although Westgate did not unilaterally establish a date for closing prior to March 27, 1977, there is ample evidence that it attempted to close within the 30-day period and that the closing date was extended beyond that time, and many times thereafter until June, 1977, mostly at Hage's request and for his benefit. In fact, Hage testified that all extensions were either requested by him or agreed to by him. His main reason for the delay was that he felt that the closing of this sale would affect the values of the other land in the area he desired to purchase. Another reason given was that in order to acquire funding for this closing he needed time to close a deal on another medical facility.

■ Even where time is of the essence by express stipulation in the contract, the stipulated time limit may be extended by the parties' waiver of strict compliance. *Puckett v. Hoover,* 146 Tex. 1, 202 S.W.2d 209, 212 (1947); *Smith v. Hues,* 540 S.W.2d 485, 488 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.). The waiver "not only may be shown by parol, but may be made to appear from the circumstances or course of dealing." *Puckett v. Hoover,* supra. The parties may also orally agree to extend the time for performance set forth in the written contract, provided the oral agreement is made before the written contract has expired. *Dracopoulas v. Rachal,* (Tex.1967) 411 S.W.2d 719, 721.

In our case, the trial court did not file findings of fact and conclusions of law, and none were requested by the parties. Therefore, we must presume that all necessary fact findings were impliedly made by the court in support of the judgment. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 613 (1950); *Goodyear Tire & Rubber Company v. Jefferson Construction Company,* (Tex.1978) 565 S.W.2d 916, 918. The evidence supports implied findings (1) that the time for closing the contract was extended by the parties' oral agreements which began within the 30-day closing period and extended into June, 1977, and (2) that Hage waived strict compliance with the stipulated time for closing.

■ The rule is well established that a contract to convey land does not satisfy the requirement of the statute of frauds (V.T.C.A., Bus. & C. § 26.01) that it be "in writing," and the contract is therefore unenforceable, unless it contains a description of the land "so definite and certain upon the face of the instrument itself, or in some other writing referred to, that the land can be identified with reasonable certainty." *Matney v. Odom,* 147 Tex. 26, 210 S.W.2d 980, 982 (1948). Hage contends that the contract in question fails to meet the land-description requirement of the statute of frauds, because of this provision for payment of the consideration:

"The total sales price is $500,243.00, payable as follows: $50,000.00 cash, of which Buyer agrees to forthwith deposit, with Seller, the sum of $25,000.00 as Earnest Money to bind this sale, and the balance to be evidenced by the execution and delivery by Buyer of Buyer's two promissory notes as follows:

(1) one promissory note in the principal sum of $356,000.00 secured by a Vendor's Lien and Deed of Trust covering approximately 4.96 acres of 6.96-acre tract, dated as of the date of closing and payable to the order of Seller, bearing interest at the rate of 10% per annum, interest payable monthly as it accrues, and due on or before 180 days from date thereof.

(2) one promissory note in the principal sum of $94,243.00 secured by a Vendor's Lien and Deed of Trust covering approximately 2 acres of the 6.96-acre tract, dated as of the date of closing and payable to the order of Seller, bearing interest at 10% per annum, interest payable monthly as it accrues, and due and payable on or before 12 mos. from date thereof.

"The exact size of the two tracts of land securing the above two notes shall be determined by survey prior to closing."

Hage acknowledges in his brief that the description set forth in the contract of the entire tract of 6.96 acres he agreed to purchase was sufficiently definite and certain to satisfy the statute of frauds, but he asserts that because the contract does not contain descriptions of the two sub-tracts which would be used in the deeds of trust as security for the notes the contract does not meet the requirement of the statute and is unenforceable. We disagree.

The claimed deficiency in the contract to which Hage points relates solely to the manner of payment and the method for securing payment of the consideration for the 6.96 acres. Specifically, it relates to the absence of land descriptions for the deeds of trust called for. In Texas, the statute of frauds does not require that the consideration or the terms of payment in a contract for the sale of realty be expressed in writing. *Botello v. Misener-Collins Company*, (Tex.1971) 469 S.W.2d 793, 794; *Garcia v. Karam*, 154 Tex. 240, 276 S.W.2d 255, 257 (1955). Additionally; "[t]he failure of the contract to provide the fundamental provisions of a deed of trust does not render the contract to sell property in itself incomplete and unenforceable" under the statute. *Johnson v. Snell*, (Tex.1974) 504 S.W.2d 397, 399. Also, we notice the evidence shows without contradiction that it was Hage's idea to divide the tract for purposes of payment and security to facilitate his funding of construction of the medical center on the larger sub-tract; that Westgate was not concerned with it; and that Hage, recognizing his right to do so, made the division.

■ In the judgment, Hage and Westgate were ordered to execute and deliver certain instruments and documents, identical in form to exhibits attached to the judgment, and tender them into the registry of the court, in order to effect specific performance of the contract of sale. On Hage's part these included a cashier's check, two notes in the principal sums of $356,-000.00 and $94,243.00, a deed of trust securing the larger note covering "approximately 4.96 acres of the 6.96 acre tract," and a deed of trust securing the smaller note covering approximately two acres of the 6.96 acres; and Hage was further ordered to attach metes and bounds descriptions of the exact acreages of each sub-tract to the respective note and deed of trust. Hage asserts that the court went beyond its powers in the judgment. He cites the following familiar rules, as set forth in *Phillips v. The Maccabees*, 50 S.W.2d 478, 479 (Tex.Civ.App.—Waco 1932, no writ), for his argument that the vendor's relief in a suit for specific performance of a contract for the sale of realty is the recovery of the purchase price and foreclosure of the implied lien to enforce payment:

"As we understand the rule, where a vendee breaches a contract for the sale of land, the vendor may treat the contract as breached and sue for the damages, or he may affirm the contract and sue for the purchase price. If the vendor elects to affirm the contract, he is entitled to recover the agreed purchase price of the land, with foreclosure of his implied lien, without waiting until the installments mature as provided in the contract. The contract purchaser, having refused to ex-

ecute notes for the deferred payments as provided in the contract, waives his right to postpone the maturity of the indebtedness." (Cases cited).

■ A suit by the vendor of land for recovery of the purchase money and to foreclose the vendor's lien is not strictly a suit for specific performance. Nevertheless, it is settled that in a suit by the vendor for specific performance of a contract for the sale of land such relief may be granted in his favor, "though the relief actually obtained by him is usually only a recovery of the purchase money, and differs from the suit to enforce a vendor's lien in the fact that the judgment is for the recovery of the money generally, and not out of the land itself as a special fund." *Gambrell v. Tatum*, 228 S.W. 287, 291 (Tex.Civ.App.— Amarillo 1921, no writ). Because the decree of specific performance vests title in the vendee, the law implies an equitable lien on the land in favor of the vendor for the purchase money which he may foreclose. *Phillips v. The Maccabees*, supra; *Gambrell v. Tatum*, supra.

Although the vendor is entitled to recover the purchase price and foreclose his implied lien in the suit for specific performance, we have found no authority holding that he is limited to that relief. In our case, if Westgate had defaulted on the contract, Hage could have recovered the precise judgment in question in an action for specific performance, if he had wanted it. See, *Vratis v. Baxter*, 315 S.W.2d 331, 338 (Tex.Civ. App.—Beaumont 1958, writ ref'd n. r. e.). We believe and hold the judgment was authorized and proper under the court's general equitable powers. Hage's contrary contention is overruled.

Hage's remaining complaint is based upon his assumption that Westgate was never able to convey good and marketable title. This contention is without merit for several reasons under the record, and it is overruled without further discussion.

■ Westgate pleaded for recovery of the carrying costs incurred by it by reason of Hage's failure to perform the contract. Those costs include the interest on an out-standing loan on the property owed by Westgate and the taxes on the property. The interest is accruing at $126.05 per day and the taxes are accruing at $13.42 per day, producing a per diem carrying cost of $139.47. Westgate contends that it is entitled to recover those costs from the closing date specified in the contract, March 27, 1977. Alternatively, Westgate seeks recovery of those costs from June 13, 1977, the date from which Hage admitted he agreed to assume those costs in order to obtain an additional extension for the closing date. This occurred on June 7, 1977, when Hage requested the extension because, he said, he wanted "time to think." In return for Westgate's approval of the extension, Hage agreed to pay the carrying costs beginning June 13, 1977.

The court refused to allow Westgate recovery of the delay costs, and Westgate assigns error to that ruling by cross point.

In an action for specific performance, allowances between the parties for rents, profits, delay costs, and like items are not "damages" as such for breach of the contract, but they are a balancing of the equities in the nature of an accounting. See, generally, 71 Am.Jur.2d 276 Specific Performance § 216.

The contract before us does not speak to the costs sought by Westgate other than to provide "current taxes, insurance and rents, if any, to be prorated to date of closing." The testimony shows that the property is immediately adjacent to a shopping center, and the record reflects that Westgate has remained in possession. There is no evidence of the use that Westgate has made, or could have made of the land, nor of the profits that Westgate is receiving or could have realized from the use of the land. Under the circumstances we cannot say the court erred in failing to allow Westgate the carrying costs it sought.

The judgment is affirmed.