**Janis A. CLAFLIN, Appellant,**

v.

**HILLOCK HOMES, INC., Appellee.**

**No. 13760.**

Court of Appeals of Texas,
Austin.

Jan. 12, 1983.

Rehearing Denied Feb. 9, 1983.

John F. Morehead, Daugherty, Kuperman, Golden, Carlisle & Morehead, Austin, for appellant.

John H. Akin, Pearce, Smith & Akin, Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and BRADY, JJ.

PHILLIPS, Chief Justice.

This is an appeal from the trial court's judgment, based upon the jury's verdict, which granted appellee, as builder and seller of a residence, specific performance of a real estate contract. The judgment also awarded appellee attorney's fees and recovery for money spent in paying interest on its interim building loan.

Appellant, by numerous points of error, challenges the trial court's (1) granting of specific performance, (2) refusal to rule that appellee's continued efforts to market the property after appellant's default constituted a waiver of the contractual remedy of specific performance, and (3) granting the appellee consequential damages by way of an accounting.

We overrule all the points of error and affirm the judgment of the trial court.[1]

---

1. The judgment awarded appellee specific performance of the contract according to the following terms:

   (1) vested title to the residence in appellant, but reserved superior title in appellee by virtue of an implied, equitable vendor's lien;

   (2) appellee recovers from appellant $180,-739.93 for the value of the residence with 9% per annum post judgment interest;

   (3) appellee recovers from appellant $17,-133.24 in interest spent in the interim financing loan with 9% per annum post judgment interest;

Appellant, approximately forty years of age, is a highly educated person who holds several advanced degrees and who earns more than $7,000 per month from her professional practice as a psycho-therapist. She is married to an attorney, who has a civil practice in Austin and who advised her and actively participated in drafting the real estate contract which is the focal point of this appeal. Appellee is a Texas corporation which custom builds homes in the Austin area.

On April 11, 1981, the parties executed a contract for the conveyance of a home in which appellant promised to pay appellee $189,500 and to pay a four-percent sales commission.[2] The contract was contingent upon appellant selling her townhouse in Houston, owned as her separate property, and obtaining a conventional loan for part of the purchase price—$114,500—at 13.5% per annum interest. By the terms of the contract, in the event appellee received an offer to purchase the residence from a third party, appellant, as buyer, was given three days to waive the precondition of selling her home in Houston. If she chose not to waive the contingency, the terms of the contract would lapse and appellee could sell the home to the third party offeror.

Nine days later, April 20, 1981, Hyzak, a third party, offered appellee $192,000 with a five-percent sales commission for the residence. After being contacted by her real-estate agent and told of the third-party offer to purchase the residence, appellant contacted her real-estate broker in Houston and was told that her townhouse would probably sell, but not for three to six months. She then decided to arrange for a "swing loan" of $75,000. She expected to use this money as the down payment to appellee for the residence. When she applied for this loan she was informed that the interest rate for such a loan would approach 21% per annum.

On April 23, 1981, appellant elected to remove the contingency, that she sell her Houston townhouse, from the terms of the contract. She did this to insure that the residence was not sold to the third-party offeror, Hyzak. The contingency was removed and she initialled the deletion in the contract.

On April 29, 1981, appellant, accompanied by her attorney husband, went to Franklin's Savings to apply for a permanent loan with which to purchase the residence. She was told that the interest rate for such a loan had increased to 15½% or 16% per annum. The contingency—that appellant obtain 13.5% per annum financing—remained in the contract, despite the deletion of the prior condition, the sale of her Houston townhouse.

On this same day, appellant had her secretary inform appellee that she "could not afford the monthly payments at 16% interest, and that [she] did not choose, therefore, to go forward with the purchase of the Hillock home." After this all the parties to this lawsuit agreed that the contract was probably unenforceable because of the virtual impossibility of appellant obtaining 13.5% financing on the purchase. Appellee's president, Gary Hillock, testified at trial that he was very disappointed that the real-estate agent handling the sale had failed to sell the home either to appellant or to the third-party offeror, Hyzak, who in fact had been told to go elsewhere. The agent had also failed to collect the $4,000 earnest money deposit which appellant had been required to provide when she removed the contingency from the contract of selling her townhouse in Houston.

A few days later, appellant, at her request, met with Hillock and outlined the

(4) appellee recovers $4,728.96 with 9% per annum post judgment interest;

(5) appellee recovers $14,295 in attorney's fees with 9% per annum post judgment interest for representation through the trial court;

(6) appellee recovers $7,500 in attorney's fees with 9% per annum interest for representation through the Court of Appeals;

(7) appellee receives $5,000 in attorney's fees with 9% per annum interest for representation through the Supreme Court (if needed).

**2.** The residence's address is 1209 Lost Creek Boulevard, Austin, Texas.

terms under which she would purchase the residence. Appellant and her attorney husband drafted a *new* real estate contract pursuant to these terms and Hillock signed the contract, virtually as drafted by appellant.

The *new* contract, dated May 6, 1981, reflected a lower price as the result of the waiver of the sale commission. The sales price of $179,000 was conditioned only upon the buyer's obtaining a conventional loan of $104,000 at a rate of 16% per annum. The previous condition, the sale of the Houston townhouse which had been deleted in the first contract after appellee received the third party offer from Hyzak, was intentionally omitted by appellant in the second contract.

The contract contained the following clause:

DEFAULT: If Buyer fails to comply herewith, Seller may either enforce specific performance or terminate this contract and receive the Earnest Money as liquidated damages, one half of which (but not exceeding the herein recited Broker's fee) shall be paid by Seller to Broker in full payment of Broker's services . . . .

The second contract required a closing date of June 19, 1981.

Appellant successfully applied for a 16% per annum loan to purchase the residence.

Although when Hillock contacted appellant in late May, 1981, she stated, "Gary [appellee's president], don't get negative thoughts, I want that house," she and her attorney husband had already contacted a certified trial specialist with special expertise in specific performance litigation. This attorney, having studied the real-estate contracts and the factual background of the parties' dealings, informed appellant that she could not be forced into buying the residence, although he cautioned her she might have to pay some small damages to appellee.

On June 14, 1981, five days before the contractual closing date, appellant met with Hillock and informed him that she would not purchase the residence because her Houston townhouse had not been sold. Appellee, at that time as well as all other times, was ready, willing, and able to perform under the terms of the contract drafted by appellant.

On June 25, 1981, appellee's attorney wrote a demand letter to appellant in care of her attorney husband demanding appellant to perform under the terms of the contract and to communicate her intentions within five days. Appellant, acting under the advice of the above mentioned attorney, ignored the demand letter and Hillock's other attempts at communication. Appellant only once contacted appellee through her attorney during the time between her breach of the contract and the commencement of the lawsuit. In this communication, her counsel admitted to appellee that appellant had no defense under the terms of the contract. He later testified that his strategy was one of delay, in which he hoped that time would become their ally and alleviate the situation. After this one communication, appellant and her attorney refused to talk with appellee. Her attorney testified that their later refusal to communicate was intended to give appellee sufficient time in which Gary Hillock would fail to "mitigate his damages and waive any of his contractual remedies."

Appellee, Hillock Homes, Inc., allowed the residence to remain under listing and advertised as being for sale on the open market after appellant refused to purchase the residence. The broker showing the residence testified that he was reminded almost daily by Hillock that the home was still under contract with appellant and that no contract could be signed to sell the home without prior approval by appellee's counsel.

At the time of the actual filing of the lawsuit, appellee had been unable to sell the residence and had incurred additional expenses in continuing to finance the interim construction loan with which it had originally built the home. Appellee had planned on paying this loan off with the proceeds of the sale to appellant. Appellee at all times

was ready, willing, and able to convey the home under the terms of the contract.

## I.

Appellant's primary contention is that she should not be forced to purchase the residence and comply with the terms of the contract she had drafted because to do so would be "inequitable." Appellant testified that she did not purchase the residence because (1) the interest on the $75,000 "swing loan," with which she planned to make her downpayment, increased from the expected 14% to 21% per annum, (2) all of her liquid assets, with which she had planned to make her interest payments until her Houston townhouse sold, had been spent in paying her federal taxes, and (3) she had been unable to sell her Houston townhouse.

Since appellant in drafting the contract did not include any of the above mentioned reasons as conditions precedent to the execution of the contract and in fact one condition, the sale of the Houston townhouse, was intentionally omitted, appellant in essence seeks to void the contract and deny appellee its contractual remedy of specific performance, not because of the terms of the contract, but because of "equity" or "hardship" to her.

The Supreme Court in *Bennett v. Copeland,* 149 Tex. 474, 235 S.W.2d 605 (1951) (at 609) stated:

Mere hardship is not sufficient ground for denial of the right to specific performance of a contract otherwise subject to enforcement .... Especially where it was fairly and voluntarily assumed as part of a contract .... In this respect a contract for the sale of land will be enforced as a matter of right, regardless of its wisdom or folly, if fairly and under-

standingly made ... [C]ourts cannot arbitrarily refuse specific performance of a contract, because they deem it unwise, or because subsequent events disclose that it will result in a loss to defendant; but *to justify the refusal of this relief it must appear that the defendant had been misled and overreached to such an extent that the contract is unconscionable.* (emphasis added)

█ It therefore appears two basic questions must be answered in deciding whether appellee is entitled to its contractual remedy of specific performance. The first is, "Was the contract fairly and freely made?" The second is, "Was Appellant misled or overreached?" In reviewing the facts of this case it would appear the answer to the former is yes and the answer to the latter is no.[3]

Appellant freely and voluntarily entered into the second contract. She not only drafted the contract with the help of her attorney husband, but she also dictated virtually all of the contract's terms agreed to at the May, 1981, meeting, which meeting she had requested.

█ It seems odd that appellant, who has breached both contracts with appellee, and whose actions have caused appellee the additional expense of financing the construction of the home months past the construction note's projected payment date, now seeks to deny appellee his contractual remedy of specific performance because it would be "inequitable to her."

As this Court stated in *W.E.M., Inc. v. Weatherton,* 447 S.W.2d 430, 435 (Tex.Civ. App.1969, writ ref'd n.r.e.):

Although courts of equity may decline to enforce those contracts which are inequitable or unfair, it is not their province to

---

**3.** Appellant relies upon *Kress v. Soules,* 152 Tex. 595, 261 S.W.2d 703 (1953), for the proposition that the relative hardship to each of the parties in granting the specific performance should be the primary concern of the trial court. Appellant is in error in believing that the Court in *Kress* overruled or weakened *Bennett v. Copeland, supra,* which was handed down two years earlier. *Kress* has never been subsequently used for the contention appellant

makes, nor do we think was it used as such in *Kress.* The Court in *Kress* stated, "one who invokes the jurisdiction of equity to compel specific performance must bring his case within the fundamental principle that the granting of the relief sought will not operate inequitably on the defendant." (261 S.W.2d at 704). We do not believe that *Kress* controls this case as appellant contends.

undo a bargain merely because it is hard. The courts are not concerned with the question of the wisdom of bargains of persons competent to deal with their own affairs, and hardship will not ordinarily prevent specific performance of a contract which was fairly and justly made, when it results from miscalculation or from contingencies which might have been forseen, and for which the complainant is not at fault.

"Whenever a contract concerning real property is in its nature and incidents entirely unobjectionable,—when it possesses none of those features which, in ordinary language, influence the discretion of the court,—it is as much a matter of course for a court of equity to decree its specific performance as it is for a court of law to give damages for its breach." *Bennett v. Copeland, supra* at 609, quoting Pomeroy, Equity Jurisdiction, 5th Ed., vol. 4, p. 1034, § 1402.

It appears in reviewing the record that no evidence is presented to justify the refusal of granting appellee's contractual remedy of specific performance. *See Odum v. Sims,* 609 S.W.2d 881, 883 (Tex.Civ.App. 1980, no writ); *Estate of Griffin v. Sumner,* 604 S.W.2d 221, 225 (Tex.Civ.App.1980, writ ref'd n.r.e.); *United Coin Meter Co., Inc. v. Johnson-Campbell Lumber Co.,* 493 S.W.2d 882, 887 (Tex.Civ.App.1973, no writ); *E.I. DuPont de Nemours & Co. v. Zale Corporation,* 462 S.W.2d 355 (Tex.Civ.App.1971, writ ref'd n.r.e.).

## II.

Appellant next challenges the trial court's award of specific performance because of appellee's actions in continuing to try to sell the residence after appellant announced her refusal to purchase the property. Appellant contends that appellee, in attempting to sell the property, acted inconsistent with appellant's right to purchase the property and thereby waived its equitable remedy of specific performance. For this proposition appellant relies upon *Kluck v. Leuscher,* 70 S.W.2d 768 (Tex.Civ.App. 1934, writ ref'd n.r.e.) and *Hamon v. Allen,* 457 S.W.2d 384 (Tex.Civ.App.1970, no writ).

In *Kluck* the buyer contracted to assume an outstanding mortgage as part of the purchase price of the residence. After the buyer defaulted, the seller paid off the mortgage and secured other debts with the property. In so doing the seller denied the buyer the bargain agreed to. The court observed: "Consequently, if the decree (of specific performance) is enforced, a different contract will be forced upon Kluck (the buyer) from that entered into by him." As seen from the facts in this case, appellee seeks to have the *exact* contract, as drawn by appellant, fully performed. Appellee is neither adding new terms to, nor deleting existing terms from the contract. Unlike in *Kluck,* appellant will be forced to perform the very bargain she drafted.

The court in *Kluck* also stated, "the right to specific performance is one which may be waived or abandoned, and abandonment may be inferred from the circumstances of the conduct of the parties showing an intention inconsistent with performance . . . and injurious to the vendee."

Appellant relies upon *Hamon v. Allen, supra,* for the proposition that appellee waived its right to specific performance by advertising the residence for sale. Appellant contends that this act was inconsistent with her potential performance under the terms of the contract, although she readily admitted that she consistently refused to perform under the terms of the contract and in fact had orally repudiated her executory performance.

In *Hamon,* a sharply divided Court of Civil Appeals stated in dicta that a vendor, who the Court had already found not willing, not ready, and not able to perform under the contract, had waived his right to specific performance because he had obligated himself to sell the home under a multiple listing agreement with a real-estate agent. In this contract he had also presented himself as the actual owner of the property when he was not. As the facts in this case show, appellee had merely advertised the residence through a real-estate broker. Appellee had consistently remind-

ed the broker showing the home that no contract could be signed to sell the home until it was approved by appellee's counsel—who it is strongly implied would contact appellant for her approval.

The mere offering of the residence without more by appellee does not constitute either an injury to appellant or a showing of an intention inconsistent with the performance of the contract by appellee. Unlike in *Hamon,* appellee is and always has been ready, willing, and able to perform under the terms of the contract.[4]

Appellant also questions the trial court's submission of appellee's alleged "waiver" or "abandonment" of its contractual remedy. The trial court submitted the following issues:

Special Issue No. 1

Do you find from a preponderance of the evidence that on June 14, 1981, the parties agreed to cancel the May 6, 1981, contract if Mrs. Claflin did not close by June 19, 1982?

Answer "we do" or "we do not."

Answer: We do not.

Special Issue No. 5

Do you find from a preponderance of the evidence that Hillock Homes, Inc. by or through any of its agents or officers, after June 14, 1981, by any act or failure to act, intended to free Mrs. Claflin from her obligation to buy the house in accordance with the May 6, 1981, contract?

Answer "we do" or "we do not."

Answer: We do not.

Special Issue No. 6

Do you find from a preponderance of the evidence that at any time after June 14, 1981, Hillock Homes, Inc., by or through any of its agents or officers, took any action or failed to take any action inconsistent with its position that Mrs. Claflin was still obligated to buy the house?

Answer "we do" or "we do not."

Answer: We do not.

By the submission of these issues it appears that "abandonment" and "waiver" were sufficiently submitted to the jury and that the jury found that appellee had neither "abandoned" nor "waived" its right to specific performance.

In light of the jury's findings and the controlling wisdom of *Bennett v. Copeland, supra,* and its progeny, we hold that appellee is entitled to its contractual remedy of specific performance.

III.

■ Appellant challenges the trial court's authority to enter a judgment against her for the carrying charges—the interest paid by appellee on its interim building financing between the date of the breach and the law suit—on the original building construction loan. The trial court's judgment awarded $21,862.20 to appellee as the amount paid.

Appellant relies upon *Hage v. Westgate Square Commercial,* 598 S.W.2d 709 (Tex. Civ.App.1980, writ ref'd n.r.e.) for the proposition that appellee may not recover the interim carrying costs. Appellant argues that this amount could have been reduced by appellee mitigating his damages by renting the property or by initially having the liquidated damage amount—the earnest money deposit—in an amount sufficient to cover appellee's interim financing charges.

Appellant misreads *Hage.* First, the Court in *Hage* stated that the carrying charges were not damages per se, but a form of an equitable accounting. The Court stated:

4. It is a principle tenet of this State's jurisprudence that a party must show he has been ready, willing, and able to perform under the terms of the contract to avail himself of the equitable remedy of specific performance. If the party seeking the remedy can prove that he has either performed all the obligations imposed upon him by the contract or he has tendered his performance under the terms of the contract, he is entitled to the remedy. *Gober v. Hart,* 36 Tex. 139 (1872); *Henry S. Miller Co. v. Stephens,* 587 S.W.2d 491 (Tex.Civ.App. 1979, writ ref'd n.r.e.); *Johnson v. Karam,* 466 S.W.2d 806 (Tex.Civ.App.1971, writ ref'd n.r. e.); *Harper v. Fikes,* 336 S.W.2d 631 (Tex.Civ. App.1960, writ ref'd n.r.e.); *Ratcliffe v. Mahres,* 122 S.W.2d 718 (Tex.Civ.App.1939, error ref'd).

In an action for specific performance, allowances between the parties for rent, profits, *delay costs,* and like items are not "damages" as such for breach of the contract, but they are a balancing of the equities in the nature of an accounting. See generally, 71 Am.Jur.2nd 276, Specific Performance § 216. (emphasis added)

Second, the Court in *Hage* stated that it was not error for the trial court to refuse the award of the carrying costs in light of "there (was) no evidence of the use that Westgate has made of the land, nor of the profits that Westgate is receiving or could have realized from the use of the land."

Unlike in *Hage,* appellee presented evidence that it was virtually impossible to rent the home because there was no rental market for the residence. The actual renting of the house also probably would have had an adverse effect upon appellant's desire, assuming she ever had any, to perform her duties under the terms of the contract.

The Court cannot and will not allow appellant to breach the contract she drafted and then state that appellee cannot recover by an accounting the money which was spent by appellee as a direct result of appellant's actions. We regard it as proper that the amount having been proven and found by the jury be recovered by the appellee. *See Foust v. Hanson,* 612 S.W.2d 251, 254 (Tex.Civ.App.1981, no writ); *Johnson v. Downing & Wooten Construction Co.,* 480 S.W.2d 254, 258 (Tex.Civ.App.1972, no writ); *Slaughter v. Roark,* 244 S.W.2d 698 (Tex.Civ.App.1951, writ ref'd n.r.e.).

The judgment of the trial court is affirmed.