# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00741-CV

**John D. Byram and Airport 71 Land, Ltd., Appellants**

**v.**

**Bradley S. Scott and Austin Airport Parking, Ltd., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-07-000320, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from a suit to enforce a contract for the sale of real property. After the seller refused to perform, the purchaser, who was also a lessee in possession of the property, obtained from the district court the remedies of specific performance and reimbursement for rent he paid for the use of the property during the period of delay. The sole issue presented in this appeal is whether the district court abused its discretion in refusing to reduce this monetary award by the amount of interest the seller would have earned on the purchase money during the same period if the contract had been performed. Concluding that the district court did not abuse its discretion in so ruling, we will affirm.

## BACKGROUND

Appellant John D. Byram and IH 35 Building, Ltd., owned property located near the present site of the Austin-Bergstrom International Airport. In 1999, they entered into a long-term

ground lease of the property with appellee Austin Airport Parking, Ltd. (AAP), a limited partnership owned by appellee Bradley D. Scott, through which AAP was to operate a remote airport parking facility. They also granted Scott an exclusive right to purchase the property beginning in the seventh year of the lease. Ownership of the property, as well as the rights and obligations of Byram and IH 35 Building, Ltd., under the option agreement and lease, were subsequently conveyed to appellant Airport 71 Land, Ltd. Airport 71 is apparently owned or controlled by Byram.

The option agreement provided that, if and when Scott exercised his right to purchase the property, Airport 71 would be required to convey the property to Scott for its market value plus an option fee of $480,000. The parties were required to use their best efforts to agree on a purchase price. If the parties could not agree on a purchase price after ten days of negotiations, the agreement prescribed a procedure whereby each party was to appoint a licensed real estate appraiser, which the agreement termed an "arbitrator." The two appraisers or "arbitrators" were then to attempt to agree on the property's market value. If they could not agree on market value, they were to appoint a third licensed appraiser/"arbitrator," who would render a final, binding decision.

In May 2006, Scott gave notice to Airport 71 that he was invoking his right under the option agreement to purchase the property. After several months of negotiations, the parties were ultimately unable to agree to a purchase price, so, pursuant to the option agreement, each appointed a licensed real estate appraiser/"arbitrator." After the two appraisers/"arbitrators" were unable to agree on the property's market value, they appointed a third appraiser/"arbitrator," who, on January 3, 2007, rendered a decision that the property's market value was $7,130,000 and that

the purchase price, accordingly, should be $7,610,000. Scott forwarded to Airport 71 a contract to purchase the property for this amount, to close on January 31, 2007. Airport 71 declined to close the transaction.

On February 5, 2007, Scott and AAP filed suit against Airport 71 and Byram ("appellants") alleging breach of the option agreement. They sought the remedy of specific performance—specifically, a decree requiring Airport 71 to sell the property to Scott for $7,610,000. They also sought monetary compensation for any monthly rent that Scott or AAP paid Airport 71 under the ground lease after the January 31, 2007, closing date. Appellants counterclaimed for declaratory judgment that no valid "arbitration" or determination of purchase price under the option agreement had occurred because the third appraiser/"arbitrator" had not conducted a hearing or otherwise followed the procedures of the Texas Arbitration Act.

Scott obtained partial summary judgment as to all liability issues. The parties subsequently tried to the district court the amount of any monetary compensation Scott would be awarded, as well as the issue of attorney's fees. Scott testified that between January 31 and the time of trial—August 23, 2007—he or AAP had paid Airport 71 seven months of rent under the ground lease at $50,509 per month, for a total of $353,563. Appellants argued that the district court was required to offset or reduce any monetary award to appellees by the amount of interest appellants would have earned on the purchase money during the same period had the sale contract been performed. As proof of this lost interest, appellants presented the testimony of Airport 71's corporate representative, Silverstre Garza, Jr. Garza testified that appellants would have rolled the sale proceeds into another real estate purchase through what was known as a "1031 exchange."

3

According to Garza, a 1031 exchange enables a seller of real property to avoid taxes on the capital gains from the sale by transferring its basis in the property into another property within six months of the sale. *See* 26 U.S.C. § 1031 (West Supp. 2008). Until a suitable replacement property was found, Garza testified, appellants would have invested the sale proceeds in a "Texas Capital Euro" investment fund earning an interest rate of 5.30 percent per annum. Assuming this rate of interest remained stable, Garza claimed that appellants would have earned $33,611 per month in interest on the sale proceeds. Based on these figures, the offset appellants sought would have reduced Scott's per-month compensation from $50,509 to $16,898.

The district court rendered judgment awarding Scott specific performance of the sale contract, plus $353,563 (the total amount of monthly rentals Scott or AAP had paid between the January 31, 2007 closing date and time of trial), plus an additional $50,509 (the monthly rental amount) for each succeeding month until the sale closed.[1] The district court also awarded prejudgment interest, at the applicable judgment interest rate, on each monthly rental award. The court did not adjust or offset Scott's monetary awards based on interest appellants would have earned on the purchase money during the same period. The district court also awarded Scott attorney's fees and costs. This appeal ensued.

---

[1] The parties represent that the sale finally closed in January 2008.

4

**ANALYSIS**

In a single issue, appellants contend that the district court abused its discretion in refusing to adjust or offset Scott's[2] monetary award by the amount of the interest appellants would have earned on the purchase money during the delay period. At this juncture, appellants do not complain of the judgment's decree of specific performance of the sale contract, that the decree awards monetary compensation in the amount of rentals Scott or AAP paid during the delay period (apart from the offset issue), or the attorney's fees award.

We review the district court's decisions regarding the award of monetary compensation incident to specific performance for an abuse of discretion. *See Murray v. Cadle Co.*, 257 S.W.3d 291, 300 (Tex. App.—Dallas 2008, pet. denied). We consider "whether the court acted without reference to any guiding rules and principles." *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). We defer to the district court's factual determinations if they are supported by evidence. *Brainard v. State*, 12 S.W.3d 6, 30 (Tex. 1999). We defer to the fact-finder's determinations of the credibility of the witnesses, the weight to be given the testimony, and the resolution of evidentiary conflicts. *City of Keller v. Wilson*, 168 S.W.3d 802, 819-22 (Tex. 2005). When, as here, no findings of fact and conclusions of law are filed, we infer that the district court made all fact findings necessary to support its judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *see Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). However, because a "trial court has

---

[2] Although appellants have named both Scott and AAP as appellees, the portion of the judgment they challenge on appeal awards relief solely to Scott.

5

no 'discretion' in determining what the law is or applying the law to the facts," *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992), we review its legal determinations de novo. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Brainard*, 12 S.W.3d at 30. In other words, a trial court "abuses its discretion" if it misinterprets or misapplies the law. *See Perry Homes*, 258 S.W.3d at 598; *Walker*, 827 S.W.2d at 840.

Appellants urge that the district court's refusal of an offset or adjustment for interest on the purchase money during the period of delay conflicts with established principles governing the specific performance remedy. Upon a breach of contract for sale of real property, the non-breaching party may elect to sue for either money damages or specific performance. *Shelton v. Poynor*, 326 S.W.2d 583, 585 (Tex. Civ. App.—El Paso 1959, writ dism'd). When the non-breaching party elects to sue for damages, the party has, in theory, opted to treat the contract as terminated by the breach and to seek compensation for that injury. *See Hamon v. Allen*, 457 S.W.2d 384, 391-93 (Tex. Civ. App.—Corpus Christi 1970, no writ). When the non-breaching party sues for specific performance, by contrast, he affirms the contract and asks the court to effectuate the agreement. *Id.* at 392.

This relief is not limited solely to ordering a party to sell or purchase the real estate, but may also include monetary compensation considered necessary to place the parties in the same position as if the contract had been fully performed. *Heritage Housing Corp. v. Ferguson*, 674 S.W.2d 363, 366 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). For example, if the conveyance was delayed beyond the time of performance specified by the contract, monetary compensation—such as rentals the purchaser could have earned on the property if he had owned it

6

during the delay period, or interest the seller could have earned on the purchase money during the same period—may be awarded to replicate the economic effects of having had the sale contract performed in accordance with its terms. *Id.* The rationale of such "compensation for delay is that the contract is being enforced retrospectively and the equities adjusted accordingly . . . . 'Equity looks upon things agreed to be done as actually performed.'" *Id.* at 365-66 (quoting *Johnson v. Downing & Wooten Constr. Co.*, 480 S.W.2d 254, 258 (Tex. Civ. App.—Houston [14th Dist.] 1972, no writ)). Consequently, "[i]n an action for specific performance, allowances between the parties for rents, profits, delay costs, and like items are not 'damages' as such for breach of the contract, but they are a balancing of the equities in the nature of an accounting." *Hage v. Westgate Square Commercial*, 598 S.W.2d 709, 713 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e). However, this rule is subject to an important qualification—the party who breaches the contract cannot "profit from its own breach" by obtaining monetary compensation exceeding that awarded to the non-breaching party. *See Johnson*, 480 S.W.2d at 258. In other words, the breaching party is limited only to an offset against any monetary compensation awarded to the non-breaching party. *See id.*

Appellants condemn the district court's judgment as placing Scott in the same position he would have been if the sale had been performed on January 31, 2007, without correspondingly allowing appellants an offset for interest they could have earned on the purchase money if it had been paid to them on that date. Appellants characterize Scott's award as the "lost rentals" he could have earned on the property during the period of delay—i.e., compensation for the opportunity cost of his not having received fee title as of January 31, 2007. *See Johnson*,

480 S.W.2d at 258; *Holley v. Hooper*, 205 S.W.2d 120, 123-24 (Tex. Civ. App.—Austin 1947, writ ref'd n.r.e.). In fact, while both parties have used the term "lost rentals" to describe Scott's monetary recovery, the economic substance of the award was merely a recoupment of the rentals Scott or AAP actually paid to Airport 71 for the right to possess and use the property under the ground lease.[3] The economic effect of this award, as appellants observed during oral argument before this court, was that Scott or AAP received free rent under the ground lease during the delay period. Such compensation, however, did not fully account for Scott's losses from not receiving fee title on January 31, 2007. Had the sale been consummated as the contract contemplated, Scott, for instance, could have leased the property on his own terms, sold it, or made improvements that would increase its potential returns and market value. Indeed, Scott testified that he had planned to use the property as collateral to obtain financing to expand the parking lot after the sale—and even had a contractor with "his equipment marshaled" and "ready to go" whom he had to "dismiss" when appellants refused to close. Scott claimed that because he was unable to go forward with the expansion, he lost "additional capacity" that he would have "enjoyed the revenue from," as well as "loyalty of customers and other factors that a business of this type would have benefitted from." In addition, Scott testified that he had been negotiating a possible partnership with a "very well-known national parking company" that hinged on "the condition that the land be available for sale." When appellants refused to close, Scott claims, he "was not able to complete that transaction with them per the terms of that agreement."

---

[3] As noted, Scott also recovered prejudgment interest on each monthly rental payment, thus compensating him for his opportunity cost of being deprived of these funds and the corresponding benefit appellants could have obtained from them.

Although the theory of awarding monetary compensation incident to specific performance is to place the parties in an economic position equivalent to their having performed the contract according to its terms, a trial court has broad discretion in "balancing the equities" to fashion such a remedy. *See Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied) (stating that "a trial court exercises broad discretion in balancing the equities involved in a case seeking equitable relief") (citing *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (orig. proceeding)); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 690 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (trial court determines equitable matters by balancing equities). Here, the district court in effect awarded Scott free rent under the ground lease during the delay period, but did not fully compensate him for his losses or opportunity cost attributable to not having fee title during that period. At the same time, the district court declined to award appellants a recovery representing interest they would have earned on the purchase money during the delay period. In effect, the district court offset or "netted out" Scott's uncompensated losses attributable to delay against any losses appellants might have incurred. We conclude that the district court did not abuse its broad discretion in balancing the equities in this manner. *See Hage*, 598 S.W.2d at 713. We need not address Scott's alternative arguments in support of the judgment. *See* Tex. R. App. P. 47.1. We overrule appellants' issue.

9

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   July 1, 2009